711 P.2d 900

**STATE of New Mexico,
Plaintiff-Appellant,**

v.

**James Eddie COBBS,
Defendant-Appellee.**

**No. 8631.**

Court of Appeals of New Mexico.

Nov. 12, 1985.

Paul G. Bardacke, Atty. Gen., Charles D. Noland, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Don Maddox, Maddox, Renfrow & Saunders, Hobbs, for defendant-appellee.

## OPINION

BIVINS, Judge.

From an order suppressing evidence, the state appeals. NMSA 1978, § 39-3-3(B). We reverse and remand.

In its docketing statement, the state raised two issues. The first issue was whether the patdown search of the defendant was justified, and, second, whether the search of the defendant's jacket pockets exceeded the permissible scope of a patdown search for weapons. With the filing of its brief-in-chief, the state moved to amend its docketing statement to add two additional arguments: first, whether the discovery of a syringe during the patdown provided probable cause for the further search which led to the discovery of the cocaine; and, second, whether the discovery of the syringe could be justified as the result of a search incident to a lawful arrest. We deferred ruling on the motion pending consideration on the merits. Because we rule that the frisk was justified and remand for a further fact-finding, we need not reach those issues presented by the motion. Instead, we remand the case to the district court to determine whether the scope of the officer's patdown of the defendant exceeded permissible limits; and if the scope of the patdown was within permissible limits, whether after discovering the syringe, the officer's search of the defendant was justified.

For the purposes of clarity, we order our discussion as follows:

1) Whether Officer Pell had "reasonable suspicion" to believe that the defendant was engaged in criminal activity;

2) Whether the officer's protective patdown of the defendant was permissible;

a. Whether the officer erred in failing to question the defendant prior to conducting the patdown;

b. Whether the patdown exceeded constitutional limits because prior to performing the patdown, the officer had no particularized belief that the defendant was presently armed and presently dangerous; and

c. When the right to conduct a protective search arises.

### FACTS

On February 9, 1985, at about 11:40 p.m., Officer Pell of the Hobbs Police Department received a dispatch to investigate "suspicious persons" and a possible residential burglary in progress. According to the dispatch, two men were repeatedly approaching the rear door of a residence and then returning to their vehicle. Their vehicle was parked behind the residence. There was evidence that the dispatcher had reported that the two men were sitting in the vehicle.

When Officer Pell arrived at the scene, he observed a car parked behind the residence with its lights on and two passengers sitting in it. About two minutes after the officer began surveillance, the vehicle started to leave. At that point, Officer Pell turned on the lights of his patrol car and pulled the car over. After stopping the car, the officer left his patrol car, drew his revolver, and ordered the two men out of their vehicle. He ordered the men to lean against their car with their hands on the hood. The officer kept the men in that position while awaiting the arrival of another officer. Apparently, the officer did not question the suspects or request any identification until sometime following the patdowns.

When the second officer arrived, each officer patted down a suspect. Officer Pell patted down the defendant. In the course of the patdown, the officer felt a hard object, approximately three inches long, in the right front pocket of the defendant's jacket. The officer thought that the object might be a pocket knife. Based upon that belief, he reached into the pocket in order to identify the object. When he did, a sharp object pricked his hand, and he immediately pulled his hand out of the pocket. The officer then put his hand back into the pocket in order to discover what had stuck him. He discovered a syringe.

When he discovered the syringe, Officer Pell began a search of the defendant for narcotics. In the defendant's left front jacket pocket, the officer found a plastic bag, the contents of which were later determined to be cocaine.

Officer Pell, an eight-year veteran of military and civilian police work, justified the patdowns of the suspects on the basis of the nature of the dispatch. Because he was called to investigate suspicious persons and a possible burglary in progress, the officer reasoned that the suspects might be armed or dangerous. The officer's concern for his safety was prompted only by the nature of the radio call. The suspects apparently were cooperative and displayed no violent tendencies.

Concerning his search of the defendant for narcotics, Officer Pell testified that, based upon his police experience, the discovery of the open needle suggested its use for injecting narcotics into the body. Additionally, the needle appeared to have been used; a wet substance was inside the syringe.

After he discovered the narcotics, the officer arrested the defendant, read to him his *Miranda* rights, and placed him in the back seat of the patrol car. Later, after defendant had been transported to the police station, two additional syringes were found in Officer Pell's patrol car. Those syringes were traced to the defendant.

## PROCEEDINGS BELOW

Defendant moved to suppress introduction of the cocaine on the basis that the cocaine was seized as the result of an unlawful search and unlawful arrest. At the hearing on defendant's motion, the trial judge did not allow argument because he had read the defendant's brief and the preliminary hearing transcript. The court granted the motion to suppress without expressly articulating any findings or rulings. Based upon a colloquy between the court and Officer Pell, the court apparently disapproved of the officer's failure to question the defendant prior to conducting the patdown. Due to the uncertain nature of the court's ruling, however, we will review

the stop and the frisk, beginning with an analysis of whether the stop was justified.

## DISCUSSION

*Issue I: The Initial Stop.*

■ This court has recognized that, in appropriate circumstances, a police officer may detain a person in order to investigate possible criminal activity, even if there is no probable cause to make an arrest. *State v. Galvan,* 90 N.M. 129, 560 P.2d 550 (Ct.App.1977). "Appropriate circumstances" arise from the officer's "reasonable suspicion" that the law is being or has been broken. *Id. See also Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). The officer must be able to base such "reasonable suspicion" upon specific articulable facts, together with rational inferences from those facts. *Terry v. Ohio.* Those facts and accompanying inferences must provide the basis for the reasonable suspicion. *State v. Galvan.* Unsupported intuition and inarticulate hunches are not sufficient. *Id.*

■ Reasonable suspicion is measured by an objective standard. In analyzing the sufficiency of the facts and inferences, the critical inquiry is: "Would the facts available to the officer warrant the officer, as a person of reasonable caution, to believe the action taken was appropriate." *Id.* 90 N.M. at 131, 560 P.2d at 552, *citing State v. Hilliard,* 81 N.M. 407, 467 P.2d 733 (Ct.App.1970).

■ Accordingly, our first inquiry is to determine what facts were available to Officer Pell and what inferences logically flowed from those facts. First, the officer was dispatched to investigate "suspicious persons" and a possible residential burglary in progress. Second, the dispatcher told the officer that the suspects were repeatedly approaching the rear of the residence and then returning to a vehicle parked at the back of the residence. Finally, the dispatcher informed Officer Pell that the suspects were presently seated in the vehicle.

When the officer arrived at the scene, there indeed was a vehicle parked at the rear of the home, and two persons were inside the automobile. Therefore, from the situation the officer encountered, he could logically infer that, based upon the information in the dispatch, these men and this vehicle were the subjects of the dispatch. The contents of the dispatch plus his own observations thus formed his reasonable suspicion that the men might have been engaged in criminal activity.

The next inquiry is whether Officer Pell's reasonable suspicion can satisfy the objective test: Would the information relayed in the dispatch combined with the officer's observations, which basically corroborated the dispatch, warrant a person of reasonable caution in believing that criminal activity was possibly afoot, thus necessitating an investigatory stop? *State v. Galvan.* Clearly, these articulable facts, supported by corroborating personal observation and logical inferences, would prompt a reasonable person to conclude that these suspects might be involved in criminal conduct:

> A police officer directed to a location by a general radio call cannot reasonably be instructed to close his eyes to reality—neither the officer nor justice can be that blind. The officer was rightfully and dutifully on the scene and could not ignore possible indications of criminality, nor is there any logical reason for him to reject the natural mental connection between newly encountered facts and the substance of the radio message.

*People v. Benjamin,* 51 N.Y.2d 267, 271, 434 N.Y.S.2d 144, 146, 414 N.E.2d 645, 647 (1980).

Upon these bases, we conclude that the trial court could have found that Officer Pell was amply justified in stopping the defendant. The record does not suggest that the trial court thought otherwise.

*Issue II: Permissibility of the Patdown.*

The trial court evidently believed that the failure to make inquiries prior to the patdown invalidated all evidence obtained as a direct or indirect result of the patdown.

The state contends that on these facts, the officer's conduct was reasonable. Defendant argues that the patdown was not justified because Officer Pell lacked a reasonable suspicion that defendant was armed and dangerous. We discuss each argument separately and state a standard for the right to conduct a protective search.

### A. Officer's Failure to Question Defendant Before Conducting Patdown.

■ Before Officer Pell questioned the defendant as to his identity or why he was presently at the scene, the officer had stopped the defendant's vehicle; at gunpoint, he had ordered the defendant out of the automobile; and he had frisked the defendant. The question, therefore, is whether the officer's invasion of the defendant's personal security, without prior questioning, was reasonable. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonableness is determined by objectively balancing "the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce,* 422 U.S. at 878, 95 S.Ct. at 2579 (1975).

The U.S. Supreme Court, in *Terry v. Ohio,* suggested that an officer might be required to ask a suspect some investigatory questions before commencing a patdown. The Court indicated that a search is warranted: "where in the course of investigating this [suspect] behavior he identifies himself as a policeman and *makes reasonable inquiries,* and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety * * *." 392 U.S. at 30, 88 S.Ct. at 1884 (emphasis added). *See also State v. Rivera,* 85 N.M. 723, 516 P.2d 694 (Ct.App.1973) (where officer stopped a suspect, questioned him, then "patted down" the suspect, trial court's determination that stop and frisk was reasonable upheld).

Since deciding *Terry v. Ohio,* however, the U.S. Supreme Court apparently has abandoned the "reasonable inquiry" stan-

dard. For example, in *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the Court upheld the validity of a frisk even though the officer had not asked the suspect any questions. The Court apparently now recognizes the concern of Justice Harlan in his *Terry* concurrence: "there is no reason why an officer, rightfully but forcibly confronting a person suspected of a serious crime, should have to ask one question and take the risk that the answer might be a bullet." 392 U.S. at 33, 88 S.Ct. at 1886, Harlan, J., concurring.

Most of the lower courts also have not taken the position that *Terry* requires some preliminary questioning prior to conducting a patdown. *See* 3 W. LaFave, *Search and Seizure*, § 9.4, 112 (1978). If, however, the rationale for the stop has dissipated, a frisk is impermissible. *State v. Dechene*, 114 R.I. 276, 332 A.2d 125 (1975).

■ In cases similar to ours, courts not only have ruled that investigatory questioning prior to a patdown is unnecessary but often such inquiry may be foolhardy. For example, in *Simmons v. Commonwealth*, 217 Va. 552, 231 S.E.2d 218 (1977), the police officer responded to a complaint of a suspected burglary. The officer, who had been given a description of the suspected burglar, discovered a person who matched that description. Before conducting the patdown, the officer afforded the suspect no opportunity to explain his conduct. The court rejected the defendant's argument that the patdown was unwarranted because the officer allowed the defendant no time to explain his activities. The court stated: "[a] police officer should not be required to ask of a person whom he reasonably suspects is engaging in criminal activity or is about to commit a serious crime, to explain his conduct and run the risk of receiving a bullet in answer to his questions." 217 Va. at 556, 231 S.E.2d at 221.

Similarly, in *United States ex rel. Richardson v. Rundle*, 461 F.2d 860 (3d Cir. 1972), *cert. denied*, 410 U.S. 911, 93 S.Ct. 971, 35 L.Ed.2d 273 (1973), police officers, while on patrol in a high crime neighborhood, observed four young men fleeing from a drug store. When the police gave chase, the young men attempted to elude the officers. Upon apprehending a suspect, the officers frisked him before asking him for an explanation of his activity. The court had no objection to the officer's conduct, stating "[w]hen making inquiry of a suspected robber a frisk was more appropriate than a debate." 461 F.2d at 864.

Based on the undisputed facts in the case before us, we conclude that Officer Pell was justified in ordering the defendant out of the car and frisking him before questioning him. It was late at night when the officer confronted the suspects. The officer had been dispatched to a possible burglary in progress, and the circumstances which he encountered precisely mirrored the description in the dispatch. The suspects were seated in the automobile and possibly dangerous. At best, when an officer is merely investigating a traffic offense, he faces an inordinate risk when he approaches a subject seated in an automobile. *People v. Livigni*, 88 A.D.2d 386, 453 N.Y.S.2d 708 (1982). That risk increases immeasurably when the officer is called upon to investigate a serious crime. To require the officer to question the suspects before ordering them from the car and frisking them is an untenable demand. Police officers should not be required to take unnecessary risks in the performance of their already hazardous duties. *State v. Beaty*, 57 Wis.2d 531, 205 N.W.2d 11 (1973). The public's interests in the apprehension of possibly dangerous criminals and in the protection of the officer's safety, therefore, outweigh, in this situation, the defendant's right to personal security.

B. *Absence of Particularized Belief That Defendant Was Presently Armed and Presently Dangerous.*

■ Defendant argues that the patdown was further unjustified because Officer Pell had no particularized belief that the defendant was armed and that the defendant was presently dangerous. The state counters that, based upon the call to a possible burglary in progress, the officer

was justified in his belief that the defendant might be armed and dangerous.

Defendant relies heavily upon this court's ruling in *State v. Harrison*, 95 N.M. 383, 622 P.2d 288 (Ct.App.1980). In *Harrison*, the police had information that the defendant or her companion had a pen gun. Based upon that information, the officers ordered defendant to empty her pockets. During the course of the patdown, the officers discovered heroin. This court stated that the patdown was invalid because the officers had no reasonable belief that she was presently dangerous, despite the fact that she might have been armed. Therefore, since *Harrison*, the reasonable suspicion necessary to justify a frisk must be particularized as to the person to be frisked. Stelzner, *Criminal Procedure*, 12 N.M.L.Rev. 271, 291–92 (1982). A two-pronged test has emerged: first, the officer must have a reasonable belief that the particular subject has a weapon; and second, the officer must reasonably believe that the subject is presently dangerous to the officer.

In *Harrison*, this court relied upon *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In *Ybarra*, police officers had received a tip from a confidential informant that a controlled substance might be found on the premises of a tavern or upon the person of Greg, the bartender. Pursuant to that tip, the officers obtained a search warrant. Seven or eight officers arrived at the tavern and conducted protective patdowns of all the customers. In patting down Ybarra, an officer felt a cigarette package, containing several items. Then the officer, without removing the cigarette package, left Ybarra but later returned, reenacted the frisk, and removed the cigarette package. The officer found six packets of heroin inside the package.

The United States Supreme Court first analyzed whether, on the basis of the search warrant, the police had probable cause to believe that anyone on the premises, other than Greg, might be violating the law. The Court concluded that there was no such evidence when the warrant was issued or when the warrant was executed. The Court stated: "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Id.* at 91, 100 S.Ct. at 342 (citation omitted).

Because the requisite probable cause was lacking when the search warrant was issued, and when it was executed, the Court next analyzed whether the frisk was a reasonable patdown for weapons under the *Terry* doctrine. The Court ruled that the frisk also failed the *Terry* test. *Ybarra v. Illinois*. The Court stated that *Terry* bars a frisk based upon less than "reasonable belief or suspicion directed at the person to be frisked" that the suspect is armed and presently dangerous. *Id.* at 94, 100 S.Ct. at 343.

The Court considered the following factors. The officers did not recognize Ybarra as a man with a criminal history. They did not have any particular reasons for believing that Ybarra might pose some danger to them. Ybarra's hands were empty, and he displayed no indication of possessing a weapon. Finally, he did not behave in a threatening manner.

Considering *Harrison* in light of the review of *Ybarra*, it appears that this court may have erred in its interpretation and application of *Ybarra*. Much of this court's quotation from *Ybarra* is taken from the Supreme Court's probable cause analysis. 95 N.M. at 385, 622 P.2d at 290. The passage stating that probable cause must be particularized to the suspect in order to justify a search or seizure comes directly from the Court's analysis of whether, at the time of the issuance or execution of the warrant, the officers had probable cause to believe that Ybarra was involved in criminal conduct. 444 U.S. at 90–92. Probable cause is not the justification for a protective patdown. Reasonable suspicion of the suspect's being armed and danger-

ous is the standard by which frisks for weapons are measured. *Terry v. Ohio.*

Defendant argues that *Harrison* requires not only reasonable belief that the suspect is armed, but also that he presents a present danger. Although language from *Harrison* might lend support for that argument, we believe that case stands only for the proposition that once the weapon was discovered and secured, a patdown was no longer justified. Given the fact that one of the officers in *Harrison* had already found the pen gun before defendant emptied her pockets, defendant no longer posed a danger to the officers. Therefore, the subsequent patdown could not be constitutionally justified. To the extent, however, that *Harrison* requires that the officer must not only have reasonable suspicion that the suspect is armed but also reasonable suspicion that the suspect is presently dangerous, it is not to be followed.

### C. *Right to Conduct a Protective Search.*

It remains to be decided under what circumstances the right to conduct a protective search arises. The standard we adopt today is the standard which has been adopted in jurisdictions which have ruled that the right to frisk is automatic whenever:

the suspect has been stopped upon the suspicion that he has committed, was committing, or was about to commit a type of crime for which the offender would likely be armed, whether the weapon would be used to actually commit the crime, to escape if the scheme went awry, or for protection against the victim or others involved.

3 W. LaFave, *Search and Seizure*, § 9.4 at 116.

■ Burglary, as in our case, is a crime within the category recognized as the type of crime for which the offender would likely be armed. *Id.* The following are also included in the category of inherently dangerous crimes: robbery, rape, assault with weapons, and dealing in large narcotics transactions. An officer who stops a suspect on reasonable suspicion of such an offense may conduct a protective search. In order, however, to conduct a frisk of a person suspected of engaging in a nonviolent offense, such as possession of small amounts of marijuana, vagrancy, or possession of liquor, additional articulable facts of potential danger must be present, as well as the suspicion of criminal activity. *Id.* at 117.

■ In cases very similar to ours, courts have upheld the validity of an automatic frisk when burglary is suspected. In *State v. Flynn,* the court ruled that burglary is "certainly the type of offense" which would justify a man of reasonable caution in his belief that the suspect might be armed. 92 Wis.2d 427, 435, 285 N.W.2d 710, 713, *cert. denied,* 449 U.S. 846, 101 S.Ct. 130, 66 L.Ed.2d 55 (1980). A suspected burglar might not only possess a weapon, but he may also be armed with tools, such as knives and screwdrivers, which could be used as weapons. *People v. Myles,* 50 Cal.App.3d 423, 123 Cal.Rptr. 348 (1975). Frisks of suspected burglars have also been enforced even though the suspect did not behave in a threatening manner. *State v. Aguirre,* 130 Ariz.App. 54, 633 P.2d 1047 (1981). *See also People v. Pitt,* 110 A.D.2d 723, 488 N.Y.S.2d 38 (1985).

We conclude that, under the circumstances of the present case, Officer Pell had a right to frisk the defendant. He received a late night call to investigate a possible burglary. Based upon his police experience, he knew that burglars are often armed. He was reasonable, therefore, in his fear that suspected burglars might pose a danger to himself or nearby residents. The suspects matched the description in the dispatcher's call. Therefore, given the totality of the circumstances, there was an "ample measure of reasonable suspicion" necessary to justify Officer Pell's decision to frisk the defendant. Otherwise, it would be manifestly absurd to require a police officer to "await the glint of steel before he can act to protect his safety." *People v.*

*Benjamin,* 51 N.Y.2d at 271, 414 N.E.2d at 648. *See also People v. Pitt.*

## CONCLUSION

 We reverse the order suppressing evidence, and remand for further proceedings in light of this opinion. Specifically, the trial court should determine whether Officer Pell's patdown of the defendant exceeded the permissible scope of a protective patdown; and if the scope of the patdown was valid, whether the officer's search of the defendant, upon the discovery of the syringe, was justified.

IT IS SO ORDERED.

MINZNER and GARCIA, JJ., concur.