2008-NMCA-148

194 P.3d 742

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Billy TALLEY, Defendant–Appellee.**

**No. 27,480.**

Court of Appeals of New Mexico.

July 30, 2008.

Certiorari Denied, No. 31,289, Sept. 18, 2008.

128

Gary K. King, Attorney General, Santa Fe, NM, M. Victoria Wilson, Assistant Attorney General, Albuquerque, NM, for Appellant.

Hugh W. Dangler, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

## OPINION

CASTILLO, Judge.

{1} The State appeals the district court's grant of Defendant's motion to suppress items pulled from Defendant's pocket after a police officer took hold of Defendant's wrist to control the removal of Defendant's hand from the pocket. We determine that the officer's action was a seizure but that it was based on reasonable suspicion that Defendant was armed and dangerous. We thus reverse the district court's grant of the motion to suppress the evidence.

## I. BACKGROUND

{2} On August 31, 2005, Officers Nelson and Feist were on bike patrol. At approximately 7:00 p.m., the officers were notified via radio that an anonymous caller had reported heavy foot traffic at a nearby residence, which the caller believed to be the result of possible drug activity. Both officers were dispatched to the residence and responded within minutes of the radio notice. Upon arriving, Officer Nelson went to the

front door, while Officer Feist took up a position at a corner of the house in order to observe the back door and windows of the home.

{3} Officer Nelson knocked on the door, and Defendant answered. Defendant was on the other side of a screen door that was difficult to see through, Officer Nelson recognized Defendant from past interactions and also observed that Defendant's hand was in his pocket. Officer Nelson asked Defendant if he would step outside. Defendant kept his hand in his pocket as he began to open the door. Officer Nelson ordered him to take his hand out of his pocket. Defendant did not comply but did step completely outside, within arm's length of Officer Nelson. Officer Nelson again ordered Defendant to take his hand out of his pocket, and again he did not comply.

{4} Officer Feist observed the second refusal to comply with Officer Nelson's order, grabbed the wrist of the hand that was in Defendant's pants pocket, and secured Defendant's hand to his hip, thereby controlling Defendant's hand. Officer Feist then ordered Defendant to remove his hand from his pocket, which Defendant did while Officer Feist continued to hold on to Defendant's wrist. Once the hand was removed from the pocket, the officers observed a bag containing a crack pipe and two rocks of crack cocaine in Defendant's hand. At that point, Defendant was arrested and charged with possession of a controlled substance, contrary to NMSA 1978, § 30–31–23 (2005), and possession of drug paraphernalia, contrary to NMSA 1978, § 30–31–25.1(A) (2001).

{5} After pleading not guilty to the charges, Defendant filed a motion to suppress the evidence obtained from his pocket. Rule 5–212 NMRA. The district court granted the motion and determined that although the officers' initial encounter with Defendant was consensual, Officer Feist did not have reasonable suspicion to justify the physical seizure of Defendant's arm. This appeal followed.

## II. STANDARD OF REVIEW

{6} Our review of a district court's granting of a motion to suppress involves a mixed question of fact and law. *State v. Urioste*, 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964. With respect to the facts, we adopt the view that is most favorable to the prevailing party as long as the facts are supported by substantial evidence. *State v. Vandenberg*, 2003–NMSC–030, ¶ 18, 134 N.M. 566, 81 P.3d 19. We do not sit as a trier of fact because the district court is in the best position to resolve questions of fact. *Id.* Therefore, we draw all reasonable inferences in the evidence in favor of the district court's findings. *State v. Jason L.*, 2000–NMSC–018, ¶ 9, 129 N.M. 119, 2 P.3d 856. We review the district court's application of the law to the facts de novo. *See State v. Ingram*, 1998–NMCA–177, ¶ 5, 126 N.M. 426, 970 P.2d 1151. The reasonableness of the law enforcement officers' course of conduct is evaluated de novo and is done by examining the totality of the circumstances. *See Vandenberg*, 2003–NMSC–030, ¶ 19.

## III. DISCUSSION

{7} The State challenges the grant of Defendant's motion to suppress on two bases. The State first contends that the officer's physical touching of Defendant's arm was such a minimal seizure that it should be considered a de minimis restriction. In its second argument, the State asserts that Officer Feist had reasonable suspicion to believe that Defendant was armed and dangerous. Defendant's position is that Officer Feist did not have reasonable suspicion when he grabbed Defendant's wrist. Additionally, Defendant raises two other arguments: (1) that Officer Nelson's request that Defendant step outside constituted a seizure, and (2) that the repeated orders from Officer Nelson to Defendant to remove his hand from his pocket also constituted a seizure. We address the arguments in chronological order, beginning with Defendant's arguments regarding when the seizure occurred.

### A. Initial Interactions With Officer Nelson

{8} A seizure occurs "whenever a police officer . . . restrains [an individual's] freedom to walk away." *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889

(1968). The test to determine if such a seizure occurred is whether a reasonable person would have believed that he or she was not able to leave. *Jason L.*, 2000–NMSC–018, ¶ 15. Specific situations which can indicate a reasonable person would feel restrained include the following: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the [suspect], or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* ¶ 16 (internal quotation marks and citations omitted). We review Officer Nelson's actions in light of this standard.

### 1. Request to Step Outside

{9} The first interaction took place when Officer Nelson asked Defendant to step outside of the home after recognizing him through the screen door. Defendant disagrees with the district court's conclusion that this encounter was consensual. He contends that given the totality of the circumstances, including his history of prior interaction with Officer Nelson, it was reasonable for Defendant to believe he was not free to refuse this request. Based on this characterization of the encounter, Defendant argues that he was seized at the moment of compliance—when he stepped out of the house. Defendant maintains that since this request and the subsequent compliance is considered a seizure, Officer Nelson was required to have reasonable suspicion at the moment of the request.

{10} We are unpersuaded. The district court found that this interaction was a consensual encounter, not an illegal detention. We agree with the district court that there is evidence to support this conclusion. The request from Officer Nelson was not an order which required compliance. Instead, the record shows that Officer Nelson asked Defendant to step outside. While the officers did not inform Defendant that he had the right to refuse the request, there is no evidence indicating that the request was an order or was said in such a way as to indicate that compliance was essential. Further, the record does not indicate that the two uniformed officers could have been or were considered a threatening presence, and there is no evidence that either officer displayed a weapon.

{11} Even though there was a history between Defendant and Officers Nelson and Feist, Defendant fails to explain why this history would lead to the reasonable belief that Officer Nelson's request required compliance. Without supporting cases or illustrative facts from former interactions with the officers, there is no basis to support the conclusion that a reasonable person would have believed he or she was compelled to comply in this circumstance. *See State v. Wilson*, 2007–NMCA–111, ¶ 41, 142 N.M. 737, 169 P.3d 1184 (refraining from addressing an underdeveloped argument).

{12} For the foregoing reasons, we hold that a reasonable person in Defendant's situation would have believed that he was free to either comply with or refuse the request of Officer Nelson to step outside, and that this request therefore did not constitute a seizure.

### 2. Order to Remove Hand From Pocket

{13} According to Defendant, the second interaction—when Officer Nelson ordered Defendant to remove his hand from his pocket—constitutes a seizure as well. The district court did not separately consider whether the second interaction was a seizure. We conclude that while the consensual nature of the interaction is questionable because Defendant did not follow the officer's order, the district court was correct to hold that the order was not a seizure for another reason—because Defendant did not comply with the order.

{14} Restraint on a person's freedom to walk away is shown either by the application of physical force or by a show of authority. *Jason L.*, 2000–NMSC–018, ¶ 15. Officer Nelson's ordering Defendant to remove his hand from his pocket constitutes a showing of authority. However, Defendant did not comply with the orders. A showing of authority is a restraint only if a suspect submits to the showing of authority; if a suspect has not yet submitted to the showing of authority, he has not yet been seized. *See Cal. v. Hodari D.*, 499 U.S. 621, 623, 626, 111

S.Ct. 1547, 113 L.Ed.2d 690 (1991) (holding that the suspect did not submit when he ran from a slowly approaching unmarked police cruiser); *see also State v. Harbison*, 2007–NMSC–016, ¶¶ 14, 19, 141 N.M. 392, 156 P.3d 30 (deciding that a suspect had not submitted to the show of authority when a uniformed officer ordered the suspect not to move and he responded by running). Therefore, Officer Nelson's order was not a seizure because Defendant's failure to submit to the show of authority by Officer Nelson is determinative that the order did not constitute a seizure. *See Hodari D.*, 499 U.S. at 626, 111 S.Ct. 1547.

## B. Officer Feist's Physical Touching

{15} Physical touching is an application of physical force and constitutes a seizure under *Terry*. 392 U.S. at 19 n. 16, 88 S.Ct. 1868. The State and Defendant do not dispute that Officer Feist seized Defendant when he grabbed Defendant's wrist. The State, however, counters with the following: (1) the seizure was a de minimis restriction, or, in the alternative, (2) Officer Feist had sufficient reasonable suspicion to justify the seizure.

### 1. De Minimis Restriction

{16} Certain seizures have been held to be de minimus restrictions. To determine whether a seizure is de minimis, we must balance the benefits to the officer in completing the action with the burden on a suspect's freedom of movement. *State v. Reynolds*, 119 N.M. 383, 385, 890 P.2d 1315, 1317 (1995).

{17} The State relies on a number of New Mexico cases to support its contention that the seizure was de minimis. *State v. Duran*, 2005–NMSC–034, ¶ 37, 138 N.M. 414, 120 P.3d 836 (permitting the detention of a driver and passenger for expanded questioning asked by the officer related to the nature of the stop); *Reynolds*, 119 N.M. at 388, 890 P.2d at 1320 (allowing the detention of a driver while she produced her driver's license and proof of insurance); *State v. Taylor*, 1999–NMCA–022, ¶ 14, 126 N.M. 569, 973 P.2d 246 (allowing detention of a driver while the officer ran a wants and warrants check).

The State also relies on *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), a case that held that compliance with an officer's request to step out of a vehicle to speak to the officer during a routine traffic stop is a de minimis restriction.

{18} The State attempts to differentiate between the type of physical touching that constitutes the full pat down described in *Terry* from what the State characterizes as "brief ... touching" in the case before us. Physical touching a person's body without consent "is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be undertaken lightly." *Terry*, 392 U.S. at 17, 88 S.Ct. 1868. The State cites no authority for the proposition that physical touching by a police officer is de minimis under any circumstance. *See State v. Ryan*, 2006–NMCA–044, ¶ 3, 139 N.M. 354, 132 P.3d 1040 (holding that arguments not supported by authority will not be considered by the court). Accordingly, under the facts of this case, we are unwilling to expand the scope of a de minimis restriction to include a minor physical intrusion upon a suspect. We now turn to the issue of whether Officer Feist had reasonable suspicion to believe that Defendant was armed and dangerous.

### 2. Reasonable Suspicion

{19} The purpose of a protective frisk for weapons is to allow an officer to conduct an investigation without fear of violence. *Ingram*, 1998–NMCA–177, ¶ 6. A protective frisk seizure is justified if an officer has a sufficient degree of articulable and reasonable suspicion that the person being seized is both armed and dangerous. *Vandenberg*, 2003–NMSC–030, ¶¶ 21, 22. The objective standard applied is whether a reasonable, well-trained officer would fear for his or her safety based on the belief that the suspect may be armed and dangerous. *Id.* ¶ 23. "[T]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [officer] in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* (alteration in original)

(internal quotation marks and citation omitted). If it could be found that reasonable people might differ, the courts have deferred in favor of "the officer's good judgment." *Id.* (internal quotation marks and citations omitted). In suppressing the evidence, the district court determined that the State did not meet its burden of showing reasonable suspicion. We disagree and hold that Officer Feist did have reasonable suspicion that Defendant was armed and dangerous.

{20} Under *Terry*, there are two grounds upon which an officer may base reasonable suspicion: (1) that the suspect may be armed and dangerous and (2) that the suspect may have committed or is committing a crime. *See* 392 U.S. at 10, 88 S.Ct. 1868. Defendant argues that the officers had no reasonable suspicion that Defendant had committed or was committing a crime. This argument was not preserved below and therefore will not be considered on appeal. *State v. Keener,* 97 N.M. 295, 298, 639 P.2d 582, 585 (Ct.App. 1981) (holding that an issue not raised in the district court level could not be considered on appeal).

{21} We now turn to *Vandenberg,* in which the officer testified in detail about the suspect's movements—from the drumming of his fingers, to the constant looking at the officer through his rear-view mirror, to the suspect's emotional response when the officer announced the intent to protectively frisk him. 2003–NMSC–030, ¶¶ 9, 29, 30. The officer further testified how each of these actions led him to become more and more suspicious that the suspect was armed and dangerous. *Id.* ¶¶ 29–30. Accordingly, our Supreme Court held that an officer's specific observations of a suspect, along with specific and substantial safety concerns based on those observations, were sufficient to constitute reasonable suspicion. *Id.* ¶ 30.

{22} We also look to *United States v. Harris,* a Tenth Circuit Court of Appeals case. The facts in *Harris* are similar to those before us. The defendant had his hands in the pockets of his jeans and was acting nervously. 313 F.3d 1228, 1236 (10th Cir.2002). Fearing that the defendant might be concealing a weapon, the police officer requested the defendant to remove his hands from his pockets. *Id.* The defendant refused and the officer seized him for a protective frisk. *Id.* The Tenth Circuit determined that the officer was reasonably justified in believing that the defendant was armed and dangerous. *Id.* Along these lines, the State argues that Officer Feist had reasonable suspicion because (1) Defendant had a history of cooperation with law enforcement and yet was resistant in this case, (2) Defendant refused to remove his hand from his pocket while he was in close proximity to Officer Nelson, and (3) both officers testified in detail about Defendant's actions and their resulting concerns.

{23} In response, Defendant contends that the State failed to establish that Officer Feist had reasonable suspicion that Defendant was armed and dangerous. To support this argument, Defendant points out that (1) he had no history of violence toward the officers and (2) no facts established in the trial court support an articulable belief that Defendant was violent or dangerous at the time of the incident. Defendant argues that the State's contentions about officer safety are too broad and general and that rather than justifying Officer Feist's physical touching of Defendant, the safety concerns are merely inarticulate hunches, which do not provide a basis for reasonable suspicion. For support, Defendant cites cases holding that officers need to articulate facts which establish potential danger. *See Sibron v. N.Y.,* 392 U.S. 40, 62, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (observing that the act of a suspect speaking with a number of known drug addicts was not a sufficient articulated reason for reasonably believing the suspect was armed and dangerous); *Vandenberg,* 2003–NMSC–030, ¶¶ 8–9, 29–30 (finding that reasonable suspicion existed when the suspect acted nervously, drummed his fingers on the roof of the car, looked in his rear view mirror at the officer constantly, repeatedly rolling his windows down and up, and became more nervous when asked if he had any weapons in the car); *State v. Haddenham,* 110 N.M. 149, 154, 793 P.2d 279, 284 (Ct.App.1990) (holding that reasonable suspicion did exist when the suspect was severely intoxicated, had harassed a store clerk, was acting hostile to-

**134**

wards the officer, and had a previous record of causing disturbances).

{24} We conclude that given the totality of the circumstances, Officer Feist was justified in his seizure of Defendant's hand. Both officers testified explicitly as to their nervousness for their safety because Defendant had complied with their requests in the past and yet was not compliant in this instance and because he was in close proximity to Officer Nelson. Further, the officers were aware that Defendant was known to maybe carry a pocketknife, a weapon that Defendant could have used to cause serious injury to the officer. Taken together, these facts provide a reasonable basis for Officer Feist's belief that Defendant may have been armed and dangerous. The preciseness of the testimony given refutes Defendant's argument that the officers had only an inarticulate hunch and could not articulate their specific safety concerns regarding Defendant.

{25} Defendant also cites *State v. Cobbs*, 103 N.M. 623, 630, 711 P.2d 900, 907 (Ct.App. 1985), contending that the State bears a heavier burden to show articulated facts because Defendant was suspected of a nonviolent offense.

{26} We agree with the holding in *Cobbs* that the nature of the suspected crime is considered as a factor in order to determine reasonable suspicion. *Id.* at 626, 711 P.2d at 903. Nevertheless, the officers provided sufficient facts to establish reasonable suspicion, regardless of the nature of the suspected crime. As a result, we need not consider this argument further.

## IV. CONCLUSION

{27} We reverse the district court's grant of Defendant's motion to suppress and remand for further proceedings consistent with this opinion.

{28} **IT IS SO ORDERED.**

WE CONCUR: IRA ROBINSON and RODERICK T. KENNEDY, Judges.