This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO**,

     Plaintiff-Appellant,

v.                                                                          **No. 33,590**

**MICHAEL MORA,**

     Defendant-Appellee.


**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Matthew J. Sandoval, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Bauer, Acting Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellee


**MEMORANDUM OPINION**

**KENNEDY, Judge.**

{1}     Defendant was parked in a restaurant parking lot during routine business hours when Officer Whitfield, pursuing an anonymous "Drunk Busters"[1] phone tip, parked behind him and activated the emergency lights on his patrol car. Officer Whitfield approached Defendant, and Defendant rolled down his truck window. The district court suppressed all evidence gathered after Defendant rolled down his window at the officer's approach, holding that the State's argument that Defendant had been seized pursuant to the "community caretaking" exception to the Fourth Amendment was unsupported by the evidence. The State appealed. Finding no error, we affirm the district court.

**I.     BACKGROUND**

**A.     Standard of Review**

{2}     Whether a motion to suppress was properly granted is a mixed question of law and fact. *State v. Bolin*, 2010-NMCA-066, ¶ 12, 148 N.M.489, 238 P.3d 363.We view the facts of the case in the light most favorable to the prevailing party where those

---

[1] "Drunk Busters" is a statewide program in New Mexico administered by the New Mexico Department of Public Safety. It presents itself as "a system which allows good drivers to quickly and effectively report suspected DWI drivers through the use of a toll-free number and cell phone convenience key[,]" and "a line for suspected drunk drivers and is not intended for reporting common traffic violations[.]" http://www.dps.state.nm.us/index.php/dwi-prevention/drunk-busters/.

facts are supported by substantial evidence. *State v. Ryon*, 2005-NMSC-005, ¶ 11, 137 N.M. 174, 108 P.3d 1032 (acknowledging that the district court's findings of historical facts and witness credibility are entitled to deference). Given the limited written findings entered in its order of suppression, we consider the district court's verbal comments in granting it to the extent such comments might clarify its written ruling. *State v. Harris*, 2013-NMCA-031, ¶ 8, 297 P.3d 374.

{3}     "The question for the reviewing court is whether the trial court's result is supported by substantial evidence, not whether the trial court could have reached a different conclusion." *State v. Walters*, 1997-NMCA-013, ¶ 8, 123 N.M. 88, 934 P.2d 282 (citing *State v. Lopez*, 1989-NMCA-030, ¶¶ 4-5, 109 N.M. 169, 783 P.2d 479 (pointing out that whether a person is seized is a legal question, and whether a reasonable person would believe he was not free to leave is a factual question), *modified on other grounds by State v. Jason L.*, 2000-NMSC-018, ¶ 19, 129 N.M. 119, 2 P.3d 856). We defer to the district court with respect to factual findings and indulge all reasonable inferences that support the court's decision; we also review the constitutional question of the reasonableness of a seizure de novo. *State v. Light*, 2013-NMCA-075, ¶ 19, 306 P.3d 534.

**B.     The State Did Not Raise Reasonable Suspicion for an Investigatory Seizure**

{4}     Before trial, Defendant filed a motion to suppress the evidence obtained as a

result of Officer Whitfield's stop of Defendant, alleging that Officer Whitfield's actions were unlawful, being neither the result of reasonable suspicion nor in pursuit of community caretaker responsibilities. Defendant's motion to suppress was made under Article II, Section 10 of the New Mexico Constitution that protects against unreasonable searches and seizures. *See State v. Leyva*, 2011-NMSC-009, ¶¶ 49, 51, 149 N.M. 435, 250 P.3d 861 (holding that where a defendant raised the protection of the New Mexico Constitution and a factual basis exists, the broader protection of the state constitution is adequately raised).

{5}     The State's response to Defendant's motion to suppress asserted only that there was "no traffic stop," because Officer Whitfield was "operating under the 'community caretaker' function of law enforcement[,]" under which an officer can "stop a vehicle for a specific, articulable safety concern." The State cited *Walters* in this regard. 1997-NMCA-013, ¶ 10 (noting that a community caretaking encounter is a voluntary encounter, involving no coercion or detention; because such encounters occur without reasonable suspicion of criminal activity and are intended to further public safety, they fall outside the Fourth Amendment). According to the State, for purposes of public safety checks, this approach to Defendant leading to his rolling down his window was not a seizure, and Officer Whitfield required no reasonable suspicion to approach Defendant, whose "vehicle was parked where the Drunk Buster call said it would be."

4

However, the State argued that Officer Whitfield acquired reasonable suspicion at the point "when officers smelled the odor of alcohol emanating from [D]efendant." That occurred only after Defendant had rolled down his window at the officers' approach and engaged their questions. The State's sole argument to the district court was that Defendant's seizure was justified by the "community caretaker" exception to the warrant requirement. On appeal, the State argues that it preserved the argument that "the encounter was not initially a seizure and that any seizure was lawfully based on reasonable suspicion." We disagree; the State did not argue below that the seizure was supported by reasonable suspicion, but rather that suspicion was acquired well into the encounter with Defendant, *after* he had submitted to Officer Whitfield's authority.

{6} The State's appellate stance emphasizing reasonable suspicion for a traffic stop was not argued below. To preserve an issue for appeal, even the State must make a timely objection that specifically apprises the district court of the nature of the claimed error and invokes an intelligent ruling thereon. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280. To the extent the State now attempts to raise reasonable suspicion as grounds for a valid warrantless seizure, they may not. "A litigant may not stand on one ground of objection in the [district] court and urge another here." *Scofield v. J. W. Jones Constr. Co.*, 1958-NMSC-091, ¶ 21, 64 N.M. 319, 328 P.2d 389. We decline the State's invitation to address the matter further.

Accordingly, we proceed to analyze only the State's justification for the stop under the community caretaking exception.

**II.     DISCUSSION**

**A.     Standard for Community Caretaking**

{7}     Community caretaking encounters can be consensual or non-consensual. *See Ryon*, 2005-NMSC-005, ¶ 1 (noting that the intrusion of a caretaking encounter can occur without a warrant or consent). However, if Defendant was detained by Officer Whitfield's pursuit of community caretaking, the detention must be based on an articulated, reasonable concern for public safety. *Id.* ¶ 30; *State v. Sheehan*, 2015-NMCA-021, ¶ 13, 344 P.3d 1064, *cert. denied*, 2015-NMCERT-002, 346 P.3d 370. This equates to having "reasonable grounds to believe that there is an emergency at hand and an immediate need for [police] assistance for the protection of life or property." *Ryon*, 2005-NMSC-005, ¶ 29 (internal quotation marks and citation omitted). The primary objective of the contact must be public safety and not criminal investigation. The stopping of a vehicle for a safety concern requires an objective assessment of whether the officer had a reasonable concern for public safety. *Sheehan*, 2015-NMCA-021, ¶ 12. The subjective motivation of the officer is a factor to be considered in this regard, *Ryon*, 2005-NMSC-005, ¶ 37, to distinguish the use of public safety "as a subterfuge or pretext when the real purpose of the search is to

6

arrest a suspect or gather evidence without probable cause." *Id.* ¶ 34. Thus, detaining Defendant for the primary purpose of investigating possible criminal behavior is beyond the scope of safety concerns, and appropriate only in circumstances where there is a reasonable suspicion that the law is or has been broken. *Sheehan*, 2015-NMCA-021, ¶ 12. However, if Defendant was initially validly detained because of a community caretaking encounter, that encounter could be validly expanded at the point Officer Whitfield acquired sufficient reasonable suspicion to pursue the DWI investigation. *State v. Randy J.*, 2011-NMCA-105, ¶ 34, 150 N.M. 683, 265 P.3d 734. This is the crux of the State's argument as it was presented below. We regard the argument as unavailing for reasons that follow.

**B.      Past Erratic Driving Does Not Sufficiently Justify a Caretaking Seizure**

{8}      At the hearing on Defendant's motion, Officer Whitfield was the sole witness providing evidence. He was dispatched at approximately 7:30 p.m. to the parking lot serving a local grocery store and a Lotaburger in response to an anonymous "Drunk Buster" tip reporting a vehicle driving erratically that had parked there. Officer Whitfield testified that after his receipt of the dispatch, he proceeded not in pursuit of a DWI investigation, but out of concern that the driver of the vehicle in question was experiencing a medical emergency. According to Officer Whitfield, it is his custom to handle all "Drunk Buster calls" as an emergency based upon a belief that the person

7

might be having a heart attack or emergency health concern. He testified that he definitely was not proceeding as if he was investigating a DWI. By the same token, Officer Whitfield testified that he could not articulate what the emergency was to which he was responding, saying that "dispatch came out that it was erratic driving." Officer Whitfield's police report did not mention any suspicion of a health problem to be investigated, erratic driving, or any driving at all.

{9}     Upon reaching the parking lot, Officer Whitfield saw a truck conforming to the dispatch. It was occupied by Defendant. Officer Whitfield parked behind Defendant's car and activated his emergency lights; Officer Whitfield stated that he turns on the lights at "every emergency we go to." Defendant was sitting in the driver's seat with the keys in the ignition; the vehicle was parked and turned off. The windows to Defendant's car were rolled up prior to Officer Whitfield's approach. Nothing about the Defendant nor his truck prior to Defendant's rolling down his window at Officer Whitfield's approach indicated to the officer that Defendant was in need of assistance, such as a flat tire or opened hood, nor was there any appearance of medical distress. Defendant could not have reversed to leave the parking space, but could have driven forward. Officer Whitfield testified that had Defendant attempted to leave before conveying that he was okay, the officer would have tried to stop him from doing so.

{10}     When Officer Whitfield approached Defendant, Defendant rolled down his

window to speak with Officer Whitfield. As Defendant spoke, his speech was slurred and Officer Whitfield smelled alcohol on his breath. Officer Whitfield repeatedly testified that he did not suspect Defendant of having broken the law until after Defendant rolled down his window. After noticing the odor and slurred speech, Defendant was arrested and charged with driving under the influence, contrary to NMSA 1978, Section 66-8-102(C)(1) (2010). Officer Whitfield failed to relate erratic driving to his supposed legitimate concern Defendant's health. This was not a caretaking encounter.

## C. Defendant Was Seized When He Submitted to Police Authority

{11} Defendant did not initiate the encounter. Officer Whitfield not only activated his emergency lights, but also parked in a way that limited Defendant's movement prior to initiating contact. *See Lopez*, 1989-NMCA-030, ¶ 13 ("Ordinarily, a driver and passenger in a car whose progress is blocked by police would not believe themselves free to leave[.]"). Since activation of emergency lights can certainly constitute a show of authority that can lead to a seizure when a person submits to that authority we see no reason not to accept the district court's view of the facts. Defendant argued that he was seized by the actions of Officer Whitfield in parking behind him with his emergency equipment engaged and initiating contact through an exercise of his police authority. In *Walters*, we distinguished caretaking encounters

as voluntary, involving no coercion or detention—thus removing them from Fourth Amendment seizure scrutiny, although under some circumstances, police intrusion into an individual's privacy may be warranted owing to the public safety concern involved. 1997-NMCA-013, ¶ 10.

{12} A person is seized under Article II, Section 10 of the New Mexico Constitution "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *State v. Garcia*, 2009-NMSC-046, ¶ 37, 147 N.M. 134, 217 P.3d 1032 (internal quotation marks and citation omitted). "While police are free to engage people consensually to gather information, when they 'convey a message that compliance with their request is required,' the reasonable person would not feel free to leave and a seizure has occurred." *Id.* ¶ 39 (alteration omitted) (quoting *Jason L.*, 2000-NMSC-018, ¶ 14). This test is an objective one, in which Officer Whitfield's motivation is only marginally important. *See State v. Baldonado*, 1992-NMCA-140, ¶ 17, 115 N.M. 106, 847 P.2d 751 (stating that an officer's subjective intent is relevant only to the extent that it would bear on the beliefs of a reasonable person in the defendant's shoes); *see also Jason L.*, 2000-NMSC-018, ¶ 26 (Serna, J., specially concurring) (noting that subjective intent of an officer is relevant to the extent it has been conveyed to person seized). A seizure can be effected either through physical force or a show of authority. *See, e.g., State v.*

10

*Talley*, 2008-NMCA-148, ¶ 14, 145 N.M. 127, 194 P.3d 742. A show of authority results in a seizure only where the suspect submits to the show of authority; where the suspect has not submitted, he has not been seized. *Id.*

{13}    Whether a show of authority was employed is fact-based, and as such, we review it for substantial evidence. *Jason L.*, 2000-NMSC-018, ¶ 19. We then look to whether the circumstances reached such a level of accosting and restraint that a reasonable person would have believed he was not free to leave. *Id.* This consideration requires a de novo application of those facts to the law. *State v. Murry*, 2014-NMCA-021, ¶ 14, 318 P.3d 180. "Three factors should be considered in order to determine whether a reasonable person would feel free to walk away from an encounter with the police: (1) the conduct of the police, (2) the person of the individual citizen, and (3) the physical surroundings of the encounter." *Id.* ¶ 20 (internal quotation marks and citation omitted). Moreover, this coerced detention, in order to be "reasonable," must be based on specific articulable facts, together with rational inferences from those facts, that a particular person, the one actually detained, is breaking, or has broken, the law. *State v. Watley*, 1989-NMCA-112, ¶ 17, 109 N.M. 619, 788 P.2d 375. As mentioned above, seizure through a show of authority occurs when a suspect submits to the show of authority. *See Talley*, 2008-NMCA-148, ¶ 14.

{14}    There is no dispute between the parties that Officer Whitfield detained

Defendant, just when. Defendant maintains that he was seized by Officer Whitfield's parking behind him and engaging his emergency lights without a reasonable basis for the detention. Officer Whitfield's approaching him to ask questions in a way that conveyed to him that he was not free to leave resulted in an unconstitutional seizure.

{15} The State urged that only the facts support a view that the officer only approached Defendant pursuant to the "community caretaking" exception, which is contact with Defendant existing outside of constitutional considerations regarding the seizure of persons, and allows for warrantless temporary seizures of persons in the interest of promoting public safety. *See Ryon*, 2005-NMSC-005, ¶ 25; *Sheehan*, 2015-NMCA-021, ¶ 10. "[W]arrants, probable cause, and reasonable suspicion are not required when police are engaged in activities that are unrelated to crime-solving." *Ryon*, 2005-NMSC-005, ¶ 24.

{16} This view is unsupported by the record below. The State never argued to the district court that reasonable suspicion existed prior to the moment Defendant was seized, and the district court never ruled on the question. The State's response argued only that "[r]easonable suspicion did arise when the officers smelled the odor of alcohol emanating from [D]efendant." Prior to that time, the State maintained, there was no seizure to implicate Article II, Section 10 of the New Mexico Constitution.

{17} The district court rejected Officer Whitfield's view of the facts, and the State's

12

argument, stating that it had a "difficult time with that description of every DWI buster call refers to a medical emergency." The district court's finding that Officer Whitfield was "responding to a [D]runk [B]usters call" was significant. It specifically voiced skepticism of Officer Whitfield's credibility that he regarded every "Drunk Buster" dispatch as a medical emergency, stating: "I'm not saying that you're not telling the truth, but . . . if you get a DWI buster call, that's a red flag that you're looking for somebody that's drunk, and it goes—leads more into the area of an investigatory stop." Of course, it is up to the trier of fact to assess the credibility of witnesses. *See State v. Armijo*, 2005-NMCA-010, ¶ 4, 136 N.M. 723, 104 P.3d 1114 ("[I]t is for the fact-finder to evaluate the weight of the evidence, to assess the credibility of the various witnesses, and to resolve any conflicts in the evidence; we will not substitute our judgment as to such matters."). The district court concluded that the call was "an investigatory call that started off as a DWI," although the officer "might have a secondary thought about it being medical, or you might think of them both." *See Schuster v. N.M. Dep't of Taxation & Revenue*, 2012-NMSC-025, ¶ 27, 283 P.3d 288 (stating that "a continued investigation by an officer in his or her role as a community caretaker is reasonable as long as the officer is motivated by a desire to offer assistance and not investigate"). The district court's conclusion, that the State's object in detaining Defendant was investigative in nature and not, as the State's sole

argument averred, a "community caretaking" encounter, was supported by substantial evidence. Defendant's rolling down his window was a submission to Officer Whitfield's show of authority, and Defendant was seized at that time. By the State's calculus, it was because of that moment that any facts suggesting criminal involvement came into play. Officer Whitfield's testimony was insufficient to establish the caretaking exception. Whether or not there was reasonable suspicion to detain Defendant, the argument stands forfeit for lack of preservation in the district court. The seizure of Defendant was constitutionally unreasonable.

## III.   CONCLUSION

{18}   We agree with the district court that there were no facts supporting a legitimate public safety concern that were not rooted in Officer Whitfield's pursuit of a criminal investigation. The district court properly suppressed all evidence obtained as a result of that stop. We affirm the district court, and remand this case for any further proceedings necessary to resolve this case.

{19}   **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Chief Judge**

14

_____

**J. MILES HANISEE, Judge**