This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

**v.**                                                         No. 35,222

**SHARELL SMITH,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Becca Salwin, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**SUTIN, Judge.**

{1}     Defendant appeals her conviction for felony possession of a controlled substance. On appeal, Defendant raises two claims of error: (1) the district court erred in determining that the officer acted lawfully in patting down, handcuffing, and locking Defendant in his car; and (2) the district court erred in determining that the officer acted lawfully in taking Defendant into protective custody under the Detoxification Reform Act. This Court issued a calendar notice proposing to conclude that there was no error. Defendant has filed a memorandum in opposition in response to this Court's notice of proposed disposition, which we have duly considered. Unpersuaded, we affirm.

{2}     In this Court's calendar notice, we noted that an officer was dispatched to a hotel in reference to a possible robbery, with a description of a female suspect. [CN 2] When the officer arrived at the hotel, he saw Defendant who he described as "very agitated" and matching the dispatcher's description of the suspect. [Id.] Based on being dispatched for a possible robbery, the officer approached Defendant and asked her to place her hands behind her back to conduct a pat down for weapons. [CN 2-3] During the pat down, Defendant continued to be very agitated and was pulling back and forth, therefore, the officer handcuffed Defendant. [CN 3] Because Defendant continued to be disruptive in the hotel lobby, the officer took Defendant outside where Defendant began yelling "arrest me." [Id.] The officer also noted that Defendant

smelled of alcohol, was unsteady on her feet, and would not stand still. [Id.] Based on these circumstances, the officer placed Defendant in the back seat of his patrol car and belted her in. [Id.] The officer asked Defendant where she was staying, and Defendant informed the officer she had no place to stay. [Id.] The officer informed her he would, therefore, be taking Defendant to detox. [Id.] At this point, Defendant became combative—kicking the door, placing her foot next to the door hinge to prevent the officer from closing it, and requiring another officer to assist in closing the door. [CN3-4] The officer then informed Defendant that she was under arrest. [CN 4]

{3}    Based on these facts, this Court proposed to conclude that the pat down was proper given that the officer was dispatched to the hotel based on a possible robbery, where he encountered an agitated Defendant who matched the robbery-suspect description. In her memorandum in opposition, Defendant contends that the officer "must have a sufficient degree of articulable suspicion that the person being frisked is both armed *and* presently dangerous." [MIO 4 (citing *State v. Boblick*, 2004-NMCA-078, ¶ 11, 135 N.M. 754, 93 P.3d 775)] Defendant contends that the officer could not have possessed a reasonable suspicion that Defendant was both armed and dangerous because he frisked her immediately and did not attest that she was holding a knife or gun or even that Defendant had a suspicious bulge consistent with a concealed weapon. [MIO 4] However, as we noted in our notice of proposed

disposition, "the nature of the suspected crime is considered as a factor in order to determine reasonable suspicion" for a protective-frisk search. *State v. Talley*, 2008-NMCA-148, ¶¶ 19, 26, 145 N.M. 127, 194 P.3d 742. In fact, in *State v. Cobbs*, 1985-NMCA-105, ¶ 34, 103 N.M. 623, 711 P.2d 900, this Court held:

> The standard we adopt today is the standard which has been adopted in jurisdictions which have ruled that the right to frisk is automatic whenever: the suspect has been stopped upon the suspicion that he has committed, was committing, or was about to commit a type of crime for which the offender would likely be armed, whether the weapon would be used to actually commit the crime, to escape if the scheme went awry, or for protection against the victim or others involved.

(Internal quotation marks and citation omitted.) In *Cobbs*, we specifically held that, in addition to burglary, "[t]he following are also included in the category of inherently dangerous crimes: robbery, rape, assault with weapons, and dealing in large narcotics transactions." *Id.* ¶ 35. Thus, "[a]n officer who stops a suspect on reasonable suspicion of such an offense may conduct a protective search." *Id.* Accordingly, we conclude that given the officer's basis to believe that Defendant may be involved in a robbery, a protective search was permitted.

**{4}** With respect to the officer's authority to handcuff Defendant, we proposed to conclude that the officer had authority to do so because Defendant was agitated and pulled back and forth as the officer attempted to check for weapons. *See State v. Lovato*, 1991-NMCA-083, ¶¶ 4, 26-27, 112 N.M. 517, 817 P.2d 251 (explaining that

4

an officer may adopt precautionary measures, including performing a protective frisk and handcuffing, based on reasonable fears). In response, Defendant contends that handcuffing her illegally expanded the scope of the detention. [MIO 5] We disagree.

{5}     In *State v. Barragan*, 2001-NMCA-086, ¶ 13, 131 N.M. 281, 34 P.3d 1157, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110, this Court held that an officer was justified in both drawing a weapon and securing the defendant's hands, given the defendant's "hesitance in complying with the officers' earlier orders, his furtive behavior, and the inherently dangerous nature of the crime for which he was suspected[.]" In the present case, we conclude that based on Defendant's conduct pulling back and forth during the pat down, being agitated and disruptive, and the inherently dangerous nature of her crime, the officer was justified in handcuffing Defendant. Thus, we conclude that the district court did not err in denying Defendant's motion to suppress on the basis of the pat down or the officer handcuffing Defendant.

{6}     Furthermore, to the extent Defendant contends that her arrest was contrary to the purpose of the Detoxification Reform Act (DRA), we disagree. Defendant contends that "[i]t is the policy of this state that intoxicated and incapacitated persons may not be subjected to criminal prosecution, but rather should be afforded protection." [MIO 11 (quoting NMSA 1978, § 43-2-3 (2005))] Defendant contends

that, under the DRA, "peaceful public drunkenness could not be criminally punished, either as drunkenness or any other petty misdemeanor, including disorderly conduct." [MIO 11] *State v. Correa*, 2009-NMSC-051, ¶ 18, 147 N.M. 291, 222 P.3d 1. Thus, Defendant contends that the officer should have made an application to place Defendant in protective custody and that "[p]ersons held in protective custody are not considered arrested or charged with any crime." [MIO 11] However, we note that "the DRA does not purport to prohibit punishment for conduct that is otherwise criminal or otherwise qualifies as disorderly conduct merely because the offender may be intoxicated. While intoxication itself is not criminal, any criminal offenses committed while an accused is intoxicated are still punishable under the Criminal Code." *Id.* ¶ 19. Given that Defendant engaged in conduct beyond simply being intoxicated by being disruptive, screaming "arrest me," and kicking the police car, Defendant's arrest did not violate the purpose of the DRA.

**{7}** For these reasons and the reasons articulated in this Court's notice of proposed disposition, we affirm Defendant's conviction.

**{8}** **IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

6

**WE CONCUR:**

_____

**LINDA M. VANZI, Judge**

_____

**J. MILES HANISEE, Judge**