332 A.2d 125.

State *vs.* Alfred Joseph Dechene.

FEBRUARY 6, 1975.

Present: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

Joslin, J. The defendant, Alfred J. Dechene, was convicted by a jury in the Superior Court of unlawful pos-

session of a narcotic drug, to wit, marijuana. The state's case depends wholly upon the admissibility of five marijuana plants seized by a state police officer while he was searching for a weapon beneath the driver's seat of the defendant's automobile. Before trial, the defendant's motion to suppress that evidence was denied. The case is now here on the defendant's appeal, and he challenges the warrantless search of his automobile.[1]

At the suppression hearing, state police trooper John M. Beatrice testified that in the early morning hours of September 17, 1971, he and Trooper Walter Barlow were on patrol. They had been instructed by their patrol commander to check the area motels and to be on the lookout for a Stephen McDonough of Massachusetts who was wanted in several states for homicide and for the shooting of a police officer. Police headquarters had reported that McDonough was in the area, driving a Dodge sedan, and likely to be "holed-up" in a local motel; he was described as being long-haired, ruggedly built, and about 6 feet 1 inch tall.

While coming out of a motel driveway at about 12:40 a.m., the troopers observed what they suspected to be a Dodge sedan traveling north on Post Road. The operator and sole occupant was a long-haired male. They decided to investigate, and as they were trailing the vehicle it made a left turn into a trailer park. The officers followed and, with their red dome light flashing, pulled alongside of and stopped defendant. At that point defendant bent down underneath the steering wheel and appeared to be "doing something under the seat of the car." The officers, interpreting his gesture as a furtive attempt either to

---

[1]The defendant also raises certain questions dealing primarily with the legislative classification of marijuana as a narcotic, but those issues were answered, adversely to his present contentions, in *State* v. *Beck*, 114 R. I. 74, 329 A.2d 190 (1974) and need not be reached here.

reach for or to conceal a weapon, immediately alighted from their patrol car and approached defendant's vehicle. Trooper Barlow opened the door, Trooper Beatrice pulled defendant out of the vehicle, and they patted him down and checked his identity. In addition, Trooper Barlow searched under the driver's seat of defendant's vehicle and discovered five freshly-picked marijuana plants. The defendant was then placed under arrest, advised of his rights, and taken to the Wickford State Police barracks. The plants are the evidence upon which defendant's conviction is based.

Trooper Barlow did not testify, and defendant's account does not differ substantially from Trooper Beatrice's except that defendant described the so-called furtive gesture as occurring not after his vehicle had stopped, but when a cigarette fell from his hand to the floor of the vehicle as he was turning off the road into the trailer park driveway. In addition, the testimony disclosed that defendant was about 7 inches shorter than the 6 feet 1 inch attributed to McDonough, that he was driving a Rhode Island registered Plymouth sedan rather than the Dodge which McDonough was reported to be driving, and that the officers asked for and apparently examined his operator's license and registration.

These are the basic facts. The question is whether they justified the warrantless search of defendant's automobile. The trial justice found "probable cause" for the search, but failed to support his conclusion with either factual determinations or legal explanation, and at this juncture even the state recognizes his theory as untenable. It relies instead upon *Terry* v. *Ohio,* 392 U. S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *Adams* v. *Williams,* 407 U. S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) to justify the initial intrusion and the subsequent search of defendant's person and automobile on self-protective grounds.

*Terry* holds that the fourth amendment reaches detentions and searches conducted without probable cause for arrest. It establishes that such conduct is constitutionally permissible only when "specific and articulable facts" together with the rational inferences therefrom demonstrate to an ordinarily cautious police officer, in the light of his experience, that there is a reasonable need to detain a suspect in order to investigate possible criminal activity and also to conduct a protective search of the suspect's person where there is reason to believe that he is armed and dangerous.

In the light of these principles, there is little doubt that the initial intrusion in this case was justified. Having been alerted to the possible presence of a dangerous fugitive in this area, the troopers would have been derelict in their duty had they failed to ascertain defendant's identity once their initial observations indicated a reasonable resemblance between defendant and their superior's description of McDonough.

The "stop," then, was justified. The lawfulness of the ensuing search of both defendant's person and a portion of his automobile pivots on whether the total circumstances, including the so-called furtive gesture, permitted the troopers reasonably to conclude that a search of such scope was required for their safety. The perceived need for these protective measures depended wholly on defendant's being reasonably mistaken for McDonough at the time of the searches. Clearly, if the officers knew defendant was not McDonough before they searched him or his automobile, they would have had no reason to believe he was either criminally involved or armed and dangerous.

The state argues that the search under the front seat of defendant's automobile was simultaneous with his removal from that vehicle, and that in the light of Mc-

Donough's past record it would have been unreasonable, even under *Terry's* objective standard, to delay their protective search of defendant's person and his automobile pending ascertainment of his identity, by checking his operator's license and vehicle registration or by determining whether the description they had received of McDonough's person and automobile coincided with defendant's. To have followed that course of action, they argue, would have exposed them unnecessarily to possible injury from a person suspected of having killed a police officer.

The state's contention fails because the record is completely silent on whether it was prior to, simultaneous with, or subsequent to the search that the police discovered that defendant was Dechene and not McDonough. This determination could have been made either by examining defendant's license and registration, or by observing that he was 7 inches shorter than McDonough and driving a Plymouth instead of a Dodge. It is the state's burden to justify a warrantless search, *Bumper* v. *North Carolina,* 391 U. S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797, 802 (1968); *United States* v. *Jeffers,* 342 U. S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64 (1951); *McDonald* v. *United States,* 335 U. S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153, 158 (1948), and we cannot permit the state to satisfy that burden here by inferring from a silent record that the police did not learn until after their search that their suspect was not McDonough.

The state suggests, however, that defendant's bending down beneath the steering wheel was a furtive gesture that independently justified the police conduct. But the extension of a *Terry*-type search into the interior of an

automobile, even in those jurisdictions where recognized,[2] cannot be validated by mere gestures unless coupled with other evidence that the suspect is dangerous. Indeed, furtive gestures, without more, establish nothing, and to permit a weapons search predicated solely on such gestures, would abrogate "* * * Fourth Amendment rights on the basis of unexceptional and commonplace conduct," and could subject law-abiding citizens to "* * * the indignity of police searches simply because they have 'bent over' in order to obtain their driver's license, put on a shoe, or unbuckle a seat belt." *United States* v. *Green,* 465 F.2d 620, 628-29 (D.C. Cir. 1972) (Wright, J. dissenting); *People* v. *Superior Court,* 3 Cal.3d 807, 478 P.2d 449, 91 Cal. Rptr. 729 (1970).

The defendant's appeal is sustained, the judgment of conviction is reversed, and the case is remanded to the Superior Court for further proceedings.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff.

*Berberian & Tanenbaum, Aram K. Berberian,* for defendant.

---

[2]*United States* v. *Green,* 465 F.2d 620, 623-25 (D.C. Cir. 1972); *United States* v. *Thomas,* 314 A.2d 464 (D.C. App. 1974); *State* v. *Wausnock,* 303 A.2d 636 (Del. 1973); *Williams* v. *State,* 19 Md. App. 204, 310 A.2d 593 (1973); *State* v. *Howard,* 7 Wash.App. 668, 502 P.2d 1043 (1972).