DECISION
Prior to trial, Defendant Gary Santos moved to suppress certain evidence including a black powder revolver which was found in his automobile incident to a routine traffic stop by the South Kingstown Police Department. The evidence seized from his car on the date in question, April 24, 2010, was essential to the State's prosecution of Santos relative to the offense of carrying a firearm in a vehicle without the requisite license.
 Facts
At the hearing on the motion to suppress, the State presented two witnesses. The first witness was Patrol Officer Bethany Dolock who has been employed with the South Kingstown Police Department since November 2001. Officer Dolock was on routine patrol at approximately 8:30 p.m. on the date in question, traveling northbound on Commodore Perry Highway, also known as US Route 1. Officer Dolock was utilizing her dashboard-mounted radar in a "moving mode." As testified to by Dolock, the mode *Page 2 
she had selected allowed her to detect the speed of on-coming traffic even though she, herself, was moving toward the target under surveillance.
At about 8:31 p.m., Dolock observed a vehicle traveling at a high rate of speed in the southbound lanes. Dolock crossed over the grass-covered median strip on this portion of what is a divided highway and pursued the car which she determined to be traveling 70 miles per hour in a posted 50 mile per hour zone. Shortly after Dolock activated her overhead lights to indicate she was in pursuit, she observed the speeding car to slow, turn into the breakdown lane, and stop. Dolock pulled up behind the car, noting that it was a dark-colored Acura. Dolock exited her marked cruiser and walked toward the car. As she approached the car, she noticed that she was unable to look into the back seat by reason of what appeared to be clothes hanging from the driver's side rear ceiling. Getting closer to the car, Dolock observed several bullets in an ashtray located just to the left of the steering column. She noted that the driver had lowered his window. She immediately inquired, "Do you have a weapon?" The driver responded "no." It was at this time that Dolock was able to detect a strong odor of alcohol emanating from the car. She also observed that the driver was intentionally looking away from her, unusual behavior from that normally exhibited by a motorist stopped for speeding. The driver, later identified as Defendant Gary Santos, turned his body toward the passenger seat making it impossible for Dolock to observe what he was doing with his hands.
Fearful for her safety, Dolock partially drew her service weapon and directed Santos to "show me your hands." The Defendant complied and upon Dolock's command, exited his vehicle. He exhibited a strong odor of alcohol. At this time, Dolock, who was still alone with the Defendant, made a cursory pat down of his clothes *Page 3 
for a weapon, locating a small knife in a pocket. She again inquired as to whether or not Santos had a weapon in his vehicle. He replied "no." For her safety, Dolock handcuffed the Defendant. It was about this time in the evolution that she was joined by Rhode Island State Police Trooper Marc Lidsky, who had stopped to render assistance. Dolock had already called for a backup from the South Kingstown Police Department but assistance had not yet arrived.
Dolock began to question the Defendant further. However, the Defendant told her that "I will only answer the trooper's questions; he is charge." Shortly thereafter, two South Kingstown cruisers arrived as backup units in response to Dolock's earlier call for back-up. Dolock placed the Defendant in the rear of her cruiser and proceeded to search Santos' vehicle for weapons. In addition to examining the several loose bullets near the driver's seat, she observed a butt of what appeared to be a gun sticking out from the right front passenger seat. She tilted that seat forward and was then able observe a revolver on the floor behind the right front passenger seat. Dolock then returned to her cruiser and assisted the Defendant to exit the cruiser. It was her intention to perform a field sobriety test on the Defendant, she having noted not only the odor of alcohol on his breath, but his blood-shot, watery eyes and a sway in his stance. The Defendant refused to engage in a field sobriety test.[1] Accordingly, based on the information that Dolock then possessed, she arrested him for driving under the influence of intoxicants and transported Santos to the South Kingstown Police Station for processing. *Page 4 
Thereafter, the revolver which she had found on the floor of the Defendant's car, together with the bullets, were delivered to the report-writing room at the station where Dolock executed a report concerning her interface with and arrest of the Defendant. The subject revolver was found to be fully loaded at the time of its seizure from Defendant's car.
Rhode Island State Police Trooper Marc Lidsky was the only other witness to testify at hearing. He indicated that following his performance of a day shift, he was on his way home at about 8:30 in the evening when he came upon Dolock's cruiser with flashing lights and a car which she had apparently stopped. Lidsky pulled over, got out of his cruiser, and approached Dolock with an offer to assist as necessary. He observed Dolock to be putting handcuffs on the Defendant at the time that he approached her. As Lidsky approached Dolock and the Defendant with his offer of assistance, Dolock indicated that such assistance would be appreciated given the fact that she was all alone. In Lidsky's opinion, Santos was being belligerent, indicating to Dolock incorrectly that "the trooper is in charge." Lidsky immediately corrected the Defendant saying that it was not he who was in charge, that it was not his investigation but rather that of the South Kingstown Police Department. Lidsky noted an odor of alcohol emanating from the Defendant's breath and likewise detected that his speech was slurred. The Trooper also saw that the Defendant was unsure of his footing.
Lidsky continued to observe the interaction between Officer Dolock and the Defendant, noting that the Defendant was not directly answering the questions posed by Dolock. The Defendant was then placed in the rear of Dolock's cruiser. While Dolock returned to the Defendant's car, Lidsky kept an eye on the Defendant who remained *Page 5 
inside the rear of Dolock's cruiser. Shortly thereafter, two other South Kingstown police officers arrived in their marked cruisers. It was at about this time that Dolock indicated that she had just found a handgun in the Defendant's car. The handgun was displayed to the other officers present. Lidsky observed that the black powder revolver was loaded and was accompanied by caps.
There being no need for Trooper Lidsky to remain on scene, he left the roadside and proceeded to his home.
 Legal Analysis
This Court finds that the search of the Defendant's vehicle was both lawful and necessary to the safety of the police and the public. Accordingly, Defendant's motion to suppress is denied.
In light of holding in the recent United States Supreme Court case of Arizona v. Gant, 129 S.Ct. 1710 (2009), the State may not justify the search at issue as a search incident to arrest.Gant held that the search incident to arrest rationale "authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." Id. at 1719. At the time that Officer Dolock began to search the Defendant's vehicle, Santos had been placed in handcuffs, secured in the back seat of a patrol car, and at least one back-up officer had arrived at the scene to assist. Therefore, the Defendant was neither free nor mobile and was not within reaching distance of the passenger compartment of the vehicle. Accordingly, the search of the vehicle may not be justified by the search incident to arrest doctrine. *Page 6 
However, there was sufficient probable cause to search the vehicle for hidden weapons, given the time of night, the discovery of bullets in plain view, the furtive movement by the Defendant, and his purposeful failure to look directly at Officer Dolock.
In State v. Dechene, 332 A.2d 125, 127-28 (R.I. 1975), our high court noted that officers may not search the interior of an automobile for weapons based on gestures of the defendant unless such movements are coupled with other evidence that the suspect is dangerous. The court further stated that "furtive gestures, without more, establishes nothing, and to permit a weapons search predicated solely on such gestures would abrogate Fourth Amendment rights on the basis of unexceptional and commonplace conduct."Id. at 128. Here, there were sufficient other objective facts to constitute probable cause that a firearm would be found in the vehicle.
Officer Dolock not only observed the Defendant making a furtive movement to his right, preventing Dolock from observing what he was doing with his hands, but Santos avoided eye contact with her. These facts, together with the observation of bullets in plain view near the steering column, provided her with a sufficient basis to search for hidden weapons. Of course, under the so-called "automobile exception" no warrant was required before a search of the vehicle was undertaken. State v. Werner, 615 A.2d 1010 (R.I. 1992).
Finally, assuming arguendo that Officer Dolock did not have probable cause to search the Defendant's vehicle, the revolver which was seized is admissible because it would have been inevitably discovered during an inventory search. The inevitable *Page 7 
discovery doctrine creates an exception to the exclusionary rule. The question becomes not whether the police actually obtained the evidence from an untainted source, but whether evidence obtained through a constitutional violation would have been inevitably discovered through a lawful means — here an inventory search.See Nix v. Williams, 467 U.S. 431 (1984).
In State v. Louro, 589 A.2d 1197, 1199 (R.I. 1991), our Supreme Court explained the general purposes to be served by an inventory search: "(1) the protection of the owner's property while it remains in police custody, (2) the protection of the police against claims or disputes over lost or stolen property, and (3) the protection of the police from potential danger." Neither Officer Dolock nor Trooper Lidsky testified to a police department procedure regarding an inventory search of vehicles seized or impounded. However, because the Defendant was under arrest for driving under the influence of alcohol and he was the sole occupant of the vehicle, it is clear that his car was required to be towed from the four lane highway on which Defendant was stopped. Because Officer Dolock had already discovered bullets in the vehicle, the police could not fail to inventory the contents of the vehicle, even if only for the protection of the police from potential danger. It would have been an obvious dereliction of duty had the police failed to search the car under these circumstance. Because the revolver would have been discovered during an inventory search of the subject vehicle, the evidence found therein is admissible under the inevitable discovery doctrine. To rule otherwise would either deter police from making safe a vehicle known to contain dangerous objects or require the police to obtain a search warrant for dangerous materials known to be located within *Page 8 
the vehicle. The "plain view" doctrine[2] does not require such needless activity on the part of the police. Common sense occasionally aligns itself with the law. This is one such occurrence[3].
[1] As revealed at hearing, the Defendant indicated to Dolock that "he would not refuse the field sobriety test but that he would not do them."
[2] See Coolidge v. New Hampshire,403 U.S. 443 (1971). See United States v. Willis,37 F.3d 313, 316 (7th Cir. 1994) (Warrantless seizure of gun valid because officer in legitimate position to view gun when car parked in school parking lot, subject to observation by anyone who cared to look.)
[3] It must be remembered that the exclusionary rule is not a personal constitutional right, but rather a judicially-created remedy to deter police violations of the Constitution. SeeUnited States v. Leon, 468 U. S. 897, 906 (1984). Because the goal of deterrence will not always be advanced by excluding relevant, but illegally obtained evidence, the United States Supreme Court has identified several exceptions to the exclusionary rule. One of these is the inevitable discovery doctrine. SeeMurray v. United States, 487 U.S. 533, 539 (1988).