**Certiorari Denied, May 5, 2010, No. 32,318**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-051**

**Filing Date: March 23, 2010**

**Docket No. 28,538**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**JOSE MANUEL MARTINEZ,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Stephen Bridgforth, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**SUTIN, Judge.**

**{1}** After the denial of his suppression motion, Defendant Jose Manuel (Melo) Martinez entered a conditional guilty plea to charges of trafficking a controlled substance (by possession with intent to distribute) and possession of drug paraphernalia. This case requires us to determine the reasonableness of expanding Defendant's detention initiated by an investigation into an aggravated battery, followed by the smell of burnt marijuana in a

1

residence that Defendant was visiting, and ending in a search of Defendant's vehicle for narcotics. We affirm.

**BACKGROUND**

**{2}**   On November 16, 2006, Officers Baker and Lujan of the Las Cruces Police Department began investigating an aggravated battery that occurred several days earlier. The victim of that aggravated battery suffered extensive injuries to the back of his head and face and was in a coma when transported to the hospital. The victim informed the officers that the perpetrators were Defendant and Arredondo, that the incident occurred at 600 South San Pedro, and that Defendant drove a red Isuzu. Officer Baker remembered seeing a red Isuzu parked at that address as the officers were going to talk to the victim.

**{3}**   The officers interviewed the neighbors at 325 San Pedro who informed them that Arredondo had gone by their residence with a hand gun a few days earlier. The officers went to 600 South San Pedro to continue the investigation, and the red Isuzu was still parked outside. When the officers arrived there at around 1:22 p.m., a man with the word "Melo" tattooed on his neck answered the door, and Officer Baker noticed the odor of burnt marijuana emanating from the residence. The strong odor of marijuana alerted the officers to the presence of narcotics. The officers asked the occupants of the residence to step outside.

**{4}**   Because of what the neighbors had said about Arredondo carrying a handgun and to ensure their own safety, the officers asked the occupants if they had any weapons and patted them down. The officers then asked the occupants to sit down on a sidewalk in front of the residence and, with the consent of a person who lived at the residence, the officers conducted a protective sweep to check for anyone hiding inside. The officers did not see any drugs in plain view while inside.

**{5}**   During the suppression hearing, Officer Baker explained that the officers collected everyone's information to run wants and warrants checks to find out who lived at that residence. Defendant told the officers that he did not live there. Officer Baker also testified that she was trying to identify Defendant and find out if he drove the red Isuzu to "put the pieces together of the information [she] received." She inquired as to which of the vehicles parked outside belonged to whom and Defendant indicated that he owned the red Isuzu.

**{6}**   The officer asked Defendant if there were any drugs or weapons in the vehicle and he indicated that there was a pry bar in his vehicle. The officers did not know if "that was possibly the weapon that was used to hit [the] victim" of the aggravated battery that they were investigating, so they asked Defendant if they could retrieve the pry bar from his vehicle. Defendant declined but offered to retrieve the pry bar for the officers himself. For safety reasons, the officers did not let Defendant retrieve the pry bar.

**{7}**   Officer Baker testified on direct examination that before going to 600 South San Pedro, she had "received some information that [Defendant] was dealing narcotics in the neighborhood." Part of Officer Baker's testimony in the audiotape recording of the

2

suppression hearing is dubbed over with an unrelated proceeding. It is not clear whether Officer Baker identified with more specificity the source of the information related to Defendant's alleged drug dealings. The recording of Officer Baker's testimony resumes during her cross-examination where she testified that the information they received about Arredondo carrying a handgun a few days before their investigation was from the neighbors at 325 San Pedro who they had spoken to earlier. The testimony was as follows:

> Q     And that information – so you received information from someone else?
>
> A     Right. We had received information that day from the neighbors at 325 San Pedro about Mr. Arredondo.
>
> Q     That was just about Mr. Arredondo and [Defendant's] past activities; is that right?
>
> A     No, the information that we had received that day about Mr. Arredondo was that he had gone . . . by the victim's residence and by the residence down the street at 325 San Pedro with a hand gun, but they didn't want to press charges.
>
> Q     It was several days previous, right?
>
> A     Yes.
>
> Q     Okay. And this information about [Defendant] or whoever dealing drugs, that wasn't about anything that was happening at that time, right?
>
> A     At the time [inaudible] --
>
> Q     At the time you investigated this at 600 San Pedro?
>
> A     It was just that he dealt drugs in general. That was the information we received.

**{8}** At approximately 2:05 p.m., Officer Baker called a canine unit to come to the location because she "had received information that [Defendant] was dealing narcotics; but the main reason was for the weapon that was possibly in the vehicle." Before the canine unit arrived, Officer Baker walked around Defendant's car and noted the dark tint on the car's windows.

**{9}** At approximately 2:20 p.m., Narcotics Officer Paul Brock arrived with the dog in response to Officer Baker's request for a narcotics canine inspection of the vehicle. Officer Brock learned from Defendant that the car belonged to Defendant, but was registered in Defendant's mother's name, and that there might be some loose marijuana on the floor board area of the vehicle. Upon approaching Defendant's vehicle, Officer Brock noticed the odor of marijuana emanating from inside.

**{10}** The canine sniff took place at approximately 2:24 p.m. Because the canine alerted, indicating that the car contained narcotics, Officer Brock obtained a search warrant for Defendant's car and from a search based on the warrant, found two bags containing cocaine, a digital scale, and rolling papers.

**{11}** A grand jury indicted Defendant on one count of trafficking a controlled substance (by possession with intent to distribute) contrary to NMSA 1978, Section 30-31-20(A)(3) (2006), and one count of possession of drug paraphernalia contrary to NMSA 1978, Section 30-31-25.1(A) (2001). Defendant was not charged with aggravated battery. Although there is no copy of the motion in the record, Defendant filed a motion to suppress the evidence obtained from the vehicle search arguing that the seizure was illegal. Following a suppression hearing on June 21, 2007, the district court issued a letter ruling denying Defendant's motion to suppress. The letter stated in relevant part:

> This is a unique case with two different types of information leading up to the detention of Defendant for a sniffer dog and a search warrant. First, is the suspicion of criminal activity of Defendant being involved in the aggravated battery. . . . Second, is the suspicion of criminal activity of Defendant selling/possessing drugs in that a witness told the [o]fficer that [Defendant] sold drugs routinely, that upon approaching the house the officer(s) smelled burnt [m]arijuana emanating from within, that [Defendant] upon exiting declined to let the officer(s) enter his car for the sole purpose of retrieving a pry[]bar in it.
>
> Considering both lines of information, the [c]ourt feels there was enough constituting suspicion of criminal activity to send for the dog and to apply for the search warrant.

The court thereafter entered an order attaching the court's letter as an exhibit and denied Defendant's motion to suppress. Defendant entered a guilty plea to the charges reserving the right to appeal the denial of his motion to suppress. This appeal followed.

**Standard of Review**

**{12}** "The standard of review for suppression rulings is whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). "We review factual determinations by the trial court under a substantial evidence standard and legal questions de novo." *State v. Brusuelas*, 2009-NMCA-111, ¶ 5, 147 N.M. 233, 219 P.3d 1 (internal quotation marks and citation omitted). This Court must defer to the district court with respect to findings of historical fact as long as they are supported by substantial evidence. *Jason L.*, 2000-NMSC-018, ¶ 10.

**DISCUSSION**

**Preliminary Observation on Incomplete Record**

**{13}**  We note that the audiotape recording of the suppression hearing is missing what would appear to be a critical portion of Officer Baker's testimony, which raises concerns about effective review in this case. This is a problem in criminal cases that occurs from time to time because of deficient recording of proceedings either from faulty equipment or faulty use of the equipment. It behooves the parties and the district court to assure that the equipment is functioning and used properly. Further, on appeal, the parties should attempt to agree on the content of any portion of the proceedings that ends up being inaudible. Under the circumstances here, we indulge in every presumption in favor of the correctness of the district court's decision. *See State ex rel. Alfred v. Anderson*, 87 N.M. 106, 107, 529 P.2d 1227, 1228 (1974) ("Upon a doubtful or deficient record[,] we indulge every presumption in support of the correctness and regularity of the decision of the trial court."). Nevertheless, because the State has not attempted to resurrect the inaudible testimony in question, we will assume that Officer Baker did not testify more specifically regarding the reliability of the informant's information.

**The Parties' Positions**

**{14}**  Defendant contends that his detention awaiting a canine was without individualized, articulable, reasonable suspicion that he was engaged in criminal activity relating to drugs in the vehicle, resulting in an illegal seizure and search in violation of the Fourth Amendment of the United States Constitution and article II, section 10 of the New Mexico Constitution.[1] Defendant argues that because Officer Baker failed to provide any evidence of the reliability of the informant, which amounted to an anonymous tip, his detention to await the canine unit was illegal because the officers did not have reasonable suspicion that he had drugs in the vehicle. Defendant also argues that because the officers lacked any information as to whether a pry bar was used in the battery, the officers could not detain him on that ground. Finally, Defendant argues that the district court improperly relied on his denial of consent to search his vehicle in its reasonable suspicion analysis.

**{15}**  The State responds that Defendant's first argument, that the officer acted on unreliable information obtained from an anonymous source, was not preserved. The State further argues that even if this argument was preserved, when focusing on the totality of circumstances, the officer formed an individualized, reasonable suspicion because the evolving circumstances allowed her to form reasonable suspicion to believe that drugs were in Defendant's car.

**Issue of Preservation**

**{16}**  In order to preserve an issue for appeal, a party must make a timely objection that specifically apprises the district court of the nature of the claimed error and invokes an intelligent ruling thereon. *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d

---

[1]Defendant does not develop any argument pursuant to *State v. Gomez*, 1997-NMSC-006, ¶¶ 22, 33-40, 122 N.M. 777, 932 P.2d 1, showing that the New Mexico Constitution affords him greater protection than the United States Constitution. We therefore limit our analysis to the United States Constitution.

1280. On appeal, the reviewing court will not consider issues not raised in the lower court unless the issues involve matters of jurisdictional or fundamental error. *See* Rule 12-216(B) NMRA; *In re Aaron L.*, 2000-NMCA-024, ¶ 10, 128 N.M. 641, 996 P.2d 431.

**{17}** At the suppression hearing, defense counsel argued that Defendant was seized when he was asked to sit outside the apartment and that the officers lacked reasonable suspicion to detain Defendant because, under *Terry v. Ohio*, 392 U.S. 1, 30 (1968), the officers needed to base their actions on a reasonable belief that criminal activity was afoot. Defense counsel never challenged the reliability of the source of the information upon which the officers acted. Defendant's attorney even acknowledged that this information had been made available to the officers when he stated without objection that "the information the officers had received was that [Defendant] might have been connected to some sort of violence or something that occurred several days before, and additionally there was some information he might be a drug dealer." Rather than attacking the reliability of the information the officers received, defense counsel challenged the expansion of Defendant's investigatory detention from the investigation of aggravated battery into a narcotics search of the red Isuzu, arguing that the general reputation as a drug dealer does not suffice for a finding of reasonable suspicion and that the odor of marijuana in the house did not attach to Defendant's vehicle. Accordingly, we hold that Defendant failed to preserve his argument relating to the reliability of the informant's information.

**Reasonableness of the Officers' Suspicion**

**{18}** Police officers may stop a person for investigative purposes if, considering the totality of the circumstances, the officers have a reasonable and objective basis for suspecting that the person is engaged in criminal activity. *State v. Werner*, 117 N.M. 315, 317, 871 P.2d 971, 973 (1994); *see State v. Vandenberg*, 2003-NMSC-030, ¶ 21, 134 N.M. 566, 81 P.3d 19 (noting that reasonable suspicion "arises if the officer can point to specific articulable facts . . . that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring" and that "[u]nsupported intuition and inarticulate hunches are not sufficient" (omission in original) (internal quotation marks and citations omitted)); *State v. Robbs*, 2006-NMCA-061, ¶ 12, 139 N.M. 569, 136 P.3d 570 (noting that "[t]he officer's suspicion must rest on specific, articulable facts, which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion" (internal quotation marks and citation omitted)). While lawful at the beginning, an officer's continued detention of an individual can turn into an unlawful one if the officer unjustifiably expands the scope of the detention. *See State v. Duran*, 2005-NMSC-034, ¶ 35, 138 N.M. 414, 120 P.3d 836 ("The length of the detention should be reasonably limited to the time it takes to complete the underlying justification for the stop."). "Continued or contemporaneous detention for purposes related to other unlawful activity requires reasonable suspicion, proven through specific articulable facts, that the motorist has been or is engaged in criminal activity." *State v. Lowe*, 2004-NMCA-054, ¶ 12, 135 N.M. 520, 90 P.3d 539.

**{19}** This case presents us with the question whether a lawful detention of Defendant in relation to an investigation of an aggravated battery could lawfully be expanded to await a canine investigation of Defendant's car for narcotics. The expanded detention was based on

information received by the officers that indicated only generally that Defendant was dealing drugs in the neighborhood, on the marijuana smell emanating from the residence Defendant was visiting, and because Defendant did not consent to the officers' retrieval of a pry bar from his vehicle, although he offered to retrieve it for the officers. To have had reasonable suspicion to support the expanded detention, the officers had to articulate specific and particularized facts that led them to reasonably believe that Defendant had drugs in the vehicle. *See Vandenberg*, 2003-NMSC-030, ¶ 21 (noting that "[u]nsupported intuition and inarticulate hunches are not sufficient" (internal quotation marks and citation omitted)).

{20} In considering the totality of the circumstances giving rise to reasonable suspicion, we examine the evolving circumstances facing an officer and consider whether the officer's subsequent actions "were fairly responsive to the emerging tableau—the circumstances originally warranting the stop, informed by what occurred, and what the officer learned, as the stop progressed." *State v. Funderburg*, 2008-NMSC-026, ¶¶ 16, 27, 144 N.M. 37, 183 P.3d 922 (internal quotation marks and citation omitted). An officer may expand the scope of an investigatory stop if the officer has reasonable suspicion that other criminal activity is taking or has taken place. *See State v. Romero*, 2002-NMCA-064, ¶ 10, 132 N.M. 364, 48 P.3d 102 ("If evidence of another crime surfaces during a routine investigatory stop, the officer may proceed in a reasonable manner to investigate."); *State v. Williamson*, 2000-NMCA-068, ¶ 8, 129 N.M. 387, 9 P.3d 70 (noting that an officer may expand the investigation beyond the initial circumstances if the officer has reasonable and articulable suspicion that other criminal activity has been or may be afoot).

{21} Here the information from the victim regarding Defendant as perpetrator of the aggravated battery, together with Defendant's name, the specific location of the battery, and the description of Defendant's vehicle justified the officers' inquiry as to whether the red Isuzu belonged to Defendant to confirm Defendant's identity. Furthermore, the information the officers received about Arredondo as one of the perpetrators, the report to the officers that Arredondo had been seen with a handgun, along with the nature of the battery, and Arredondo's presence in the residence justified also asking Defendant if he had any weapons on him and the protective patdown of Defendant. The officers asked Defendant if he had any weapons or drugs in his vehicle. Defendant does not argue that any of the questioning was improper or unjustified.

{22} Defendant does argue, however, that his denial of consent for the officers to retrieve the pry bar amounted to a denial of permission to search his vehicle and that the district court improperly relied on this denial of consent to search the vehicle in its reasonable suspicion analysis. *See Vandenberg*, 2003-NMSC-030, ¶ 46 (stating that denial of consent to search a vehicle "is not a probative fact of guilt, suspicion, or dangerousness"). However, the district court found that Defendant "declined to let the officer(s) enter his car for the sole purpose of retrieving a pry[]bar," not that Defendant denied a request for a general exploratory search of his vehicle. Denying consent to search a vehicle in general is different than denying the officers permission to retrieve an object of interest in a police investigation of which Defendant admitted possession. The officers' request, if it was for a search at all, was of a very limited scope and would not have given the officers carte blanche to go through Defendant's entire vehicle. *See State v. Flores*, 1996-NMCA-059, ¶¶ 22-23, 122 N.M. 84, 920 P.2d 1038 ("When the police have stated that a search is for a particular

7

purpose, they may not expand that search to a general exploratory search." (internal quotation marks and citation omitted)); *see also State v. Celusniak*, 2004-NMCA-070, ¶¶ 3, 24, 135 N.M. 728, 93 P.3d 10 (concluding that a police officer's search of a passenger's purse found "crammed" under the driver's seat exceeded the scope of the driver's consent to search). "The scope of a search is limited by the actual consent given." *State v. Gallegos*, 2003-NMCA-079, ¶ 22, 133 N.M. 838, 70 P.3d 1277. Had Defendant given his consent for the retrieval of the pry bar, the officers would have been bound to the scope of the request.

**{23}** Although each circumstance encountered by the officers in this case might not have been sufficient to give rise to reasonable suspicion if considered independently, viewing them as a whole yields a different result. *See State v. Sewell*, 2009-NMSC-033, ¶ 13, 146 N.M. 428, 211 P.3d 885 (stating that "police officers may stop a person for investigative purposes where, considering the totality of the circumstances, the officers have a reasonable and objective basis for suspecting that particular person is engaged in criminal activity" and that the officers may stop the suspect "briefly to verify or quell that suspicion" (internal quotation marks and citation omitted)). Here, the officers' reasonable suspicion that Defendant was hiding drugs in his vehicle arose because he was known to distribute drugs, when he was contacted Defendant was in a residence where the officers smelled the odor of burnt marijuana, and although he was willing to retrieve the pry bar for the officers, Defendant would not allow the officers to enter his vehicle for the sole purpose of retrieving it.

**{24}** Key to the district court's ultimate conclusion was Defendant's attitude regarding the retrieval of the pry bar from his vehicle. Defendant denied possession of drugs but admitted having a pry bar in his vehicle. When Defendant would not allow an officer to retrieve the pry bar from his vehicle but indicated that he would retrieve it for them, the officers could reasonably have concluded that Defendant did not have a concern about turning the pry bar over to the officers. It would not have been unreasonable for the officers to then suspect that Defendant's issue was not that of turning the pry bar over but instead Defendant was concerned that the officers would discover drugs in Defendant's vehicle while retrieving the pry bar. Defendant subsequently admitted to the canine unit officer that "there might be a small amount of loose marijuana on the floor board area" and, although no marijuana was ultimately found in the vehicle, Officer Brock testified that the car smelled like marijuana. Offering to retrieve the pry bar for the officers instead of allowing an officer to enter the vehicle to retrieve it, under the circumstances known to the officers, would be an indication that Defendant was possibly hiding drugs in his vehicle, since he was known to deal drugs and was in the presence of marijuana when the officers made initial contact with him.

**{25}** We conclude that a fifteen- to twenty-minute detention awaiting a canine sniff of the vehicle under these circumstances was not unreasonable. *See Robbs*, 2006-NMCA-061, ¶¶ 25, 29 (concluding that a thirty-five to forty-minute detention to await a canine for sniff was permissible when the officers' suspicions, originating from a tip accurately predicting movement of the defendant, were not dispelled after initial questioning of the defendant).

**CONCLUSION**

**{26}** We affirm the district court's denial of Defendant's suppression motion.

8

**{27}     IT IS SO ORDERED.**

_____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Judge**

_____

**LINDA M. VANZI, Judge**

**Topic Index for _State v. Martinez_, Docket No. 28,538**

| AE | **APPEAL AND ERROR** |
|---|---|
| AE-PA | Preservation of Issues for Appeal |
| AE-SR | Standard of Review |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CL | Controlled Substances |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-MR | Motion to Suppress |
| CA-RS | Reasonable Suspicion |
| CA-SZ | Search and Seizure |
| CA-WS | Warrantless Search |