This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.                                  **NO. 29,388**

**MARK ROSE,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Chief Judge.**

Mark Rose (Defendant) appeals the denial of his motion to suppress evidence, pursuant to a conditional guilty plea. The issue on appeal is whether officers had reasonable suspicion to expand the scope of the traffic stop to inquire about narcotics. We hold that Defendant's action of making an illegal u-turn and crossing a divided highway evinced an attempt to evade a narcotics checkpoint and gave rise to reasonable suspicion to ask Defendant if he was in possession of narcotics. We therefore affirm the district court's denial of the motion to suppress on this basis. We do not reach the constitutional questions concerning entrapment or the narcotics checkpoint because we hold that Defendant failed to preserve these arguments.

**BACKGROUND**

The relevant facts, taken from the testimony at the suppression hearing, are as follows. Officers Edgar Rosa and Oscar Alvarado of the City of Las Cruces Police Department and Deputy Gimler of the Doña Ana County Sheriff's Department set up an operation in which they placed a portable flashing sign that read "narcotics checkpoint two miles" located 300 yards north of the Hatch exit on Interstate 25. There was in fact no checkpoint. The officers were positioned to observe cars as they approached the sign. The officers were looking for drivers who either pulled off the side of the highway, discarded items, or made a u-turn after seeing the sign. The officers would then approach the vehicles.

Defendant was stopped by Deputy Gimler after he made an illegal u-turn, crossing Interstate 25 at the checkpoint sign. The deputy asked Defendant for his license and had him step out of the car. The deputy then asked Defendant whether he had any drugs in the car, and Defendant responded that he did not. At that point, Defendant became nervous, and the deputy asked him whether he had any methamphetamine in his pockets. The deputy testified that he asked about methamphetamine because Defendant was nervous, fidgeting and moving back and forth, had a filthy car, and appeared underweight according to his driver's license. The deputy testified that in his experience this was typical of methamphetamine users. In response to the question about methamphetamine, Defendant produced a leather pouch containing several bindles of methamphetamine.

Defendant was charged with trafficking by possession with intent to distribute, contrary to NMSA 1978, Section 30-31-20(A)(3) (2006). Defendant filed a motion to suppress, arguing that the initial stop and the subsequent questions about drugs were unconstitutional. At the hearing on the suppression motion, Defendant argued that the officers lacked reasonable suspicion to stop him because there was no evidence that his u-turn was illegal and because he had a right to avoid a narcotics checkpoint, so the u-turn could not be used as a basis to stop him. Defendant also argued that there was no reasonable suspicion to expand the scope of the stop to ask

3

about methamphetamine.

The district court denied the motion to suppress, finding that reasonable suspicion existed to stop Defendant based on an illegal u-turn and that, once Defendant was lawfully stopped, the officers developed reasonable suspicion to expand the scope of the stop to inquire about narcotics. Defendant appeals. Additional facts are set forth below.

**DISCUSSION**

**Standard of Review**

"Whether a search and seizure was constitutional is a mixed question of law and fact. We review factual determinations by the [district] court under a substantial evidence standard. We review the lower court's determination of legal questions de novo." *State v. Duran*, 2005-NMSC-034, ¶ 19, 138 N.M. 414, 120 P.3d 836 (citations omitted).

In his brief in chief, Defendant raises three challenges to the district court's denial of his motion to suppress. Defendant argues that (1) the ruse narcotics checkpoint was such outrageous police misconduct that it constituted entrapment, (2) the checkpoint served an illegal purpose and therefore violated the Fourth Amendment, and (3) the officers did not have reasonable suspicion to expand the scope of the stop to inquire about narcotics.

4

The State responds that Defendant did not preserve in district court either his argument that he was entrapped, or that the ruse checkpoint served an illegal purpose. Additionally, the State argues that the officers had reasonable suspicion to ask Defendant about methamphetamine based on his action of evading the narcotics checkpoint and other observations made by the officers after Defendant was stopped.

**Preservation**

"To preserve a question for review[,] it must appear that a ruling or decision by the district court was fairly invoked[.]" Rule 12-216(A) NMRA; *see State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct. App. 1986) (stating that the defendant must specifically apprise the trial court of the claimed error and invoke an intelligent ruling thereon in order to preserve the issue for appellate review).

On appeal, Defendant states that he was entrapped into making the illegal u-turn because there were no legal means to avoid the ruse checkpoint. Defendant argues that the officers' conduct, in placing notice of the checkpoint in such a way that could only be avoided by an illegal u-turn, constituted outrageous police conduct. Defendant thus raises an issue of objective entrapment. *See State v. Vallejos*, 1997-NMSC-040, ¶¶ 14-16, 123 N.M. 739, 945 P.2d 957 (stating that objective normative entrapment occurs when police conduct exceeds the standards of a proper investigation and violates substantive due process).

Defendant states that he preserved this issue with his arguments at the suppression hearing. We disagree. Defendant's arguments at the suppression hearing were focused on whether reasonable suspicion existed to justify the initial stop and to expand the scope of the stop to ask about drugs. We note that there was some mention of entrapment at the hearing. At one point, defense counsel stated:

> I [would] also point out that this is essentially an entrapment-type situation . . . citing *Sorrells* [*v. United States*, 287 U.S. 435, 451 (1932)] and *Baca v. State*[, 106 N.M. 338, 340-41, 742 P.2d 1043, 1045-46 (1987)] . . . entrapment is maybe not the word I would want to use, but this is a situation where the police are trying to induce illegal behavior or at least unusual behavior in the hopes that they could develop reasonable suspicion on the basis of that.

Defense counsel also referred generally to *Baca*, in which our Supreme Court recognized the defense of objective entrapment. *Id.* Defense counsel did mention the word "entrapment" but then moved away from it.

Defendant did not make any specific argument regarding entrapment, nor did he develop the facts on which a determination could have been made. *See Vallejos*, 1997-NMSC-040, ¶ 17 (recognizing "two broad categories of [police] impropriety [that constitute objective entrapment]: unconscionable methods and illegitimate purposes"). Moreover, Defendant failed to invoke a ruling from the district court on whether the police conduct exceeded the standards of a proper investigation. *See id.* ¶ 43 (stating that when a defendant asserts the police either used unconscionable

6

methods, or advanced illegitimate purposes in the course of a police investigation, then the trial court determines as a matter of law whether the police conduct was proper); *State v. Martinez*, 2008-NMCA-052, ¶ 10, 143 N.M. 773, 182 P.3d 154 (stating that "[i]n order to preserve an issue for appeal, it must appear that the appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court" (alteration omitted) (internal quotation marks and citation omitted)). Before denying the motion, the district court made oral findings and conclusions, all of which were limited to the issue of reasonable suspicion. No mention was made of entrapment. Defendant did not ask the district court to rule on the entrapment issue after the oral ruling, nor did he ask for a determination on this issue any time before the appeal. We do not address whether the failure to preserve this argument rises to the level of ineffective assistance of counsel. We therefore hold that Defendant's entrapment argument is not preserved.

Defendant also argues that the ruse checkpoint did not comport with the requirements for a legal checkpoint because its primary purpose was to investigate individuals for narcotics crimes, and all evidence seized as a result must be suppressed. We do not address the constitutionality of the narcotics checkpoint in this case because we determine that the issue was not preserved below. Defendant states that he argued in his motion to suppress that the ruse roadblock did not comport with

7

the requirements for a legal roadblock under *City of Las Cruces v. Betancourt*, 105 N.M. 655, 658-59, 735 P.2d 1161, 1164-65 (Ct. App. 1987), and *City of Indianapolis v. Edmond*, 531 U.S. 32 (2000). However, this was not Defendant's argument below. Rather, Defendant cited those cases for the proposition that narcotics checkpoints are illegal and argued that he had a right to avoid the checkpoint, and his illegal u-turn did not amount to reasonable suspicion to stop him. *See State v. Salazar*, 2006-NMCA-066, ¶ 9, 139 N.M. 603, 136 P.3d 1013 (stating that "parties cannot change their arguments on appeal"). Defendant did not ask the district court to analyze whether the ruse checkpoint comported with the requirements for a legal checkpoint, nor did the district court make any ruling. *See Betancourt*, 105 N.M. at 658-59, 735 P.2d at 1164-65 (setting out eight factors for the courts to consider in determining the constitutionality of a checkpoint); *see also Martinez*, 2008-NMCA-052, ¶ 10 (stating that "[i]n order to preserve an issue for appeal, . . . the appellant [must] invoke[] a ruling of the trial court on the same grounds argued in the appellate court" (alteration omitted) (internal quotation marks and citation omitted).

For these reasons, we hold that Defendant did not preserve these issues, and we do not address them on appeal. *See State v. Martinez*, 2010-NMCA-051, ¶ 16, 148 N.M. 262, 233 P.3d 791 (stating that "[o]n appeal, the reviewing court will not consider issues not raised in the lower court unless the issues involve matters of

8

jurisdictional or fundamental error"), *cert. denied*, 2010-NMCERT-005, 148 N.M. 574, 240 P.3d 1048.

**Reasonable Suspicion to Expand the Stop**

Defendant next argues that police did not have reasonable suspicion to expand the scope of their initial stop to ask him about narcotics. This issue was preserved by Defendant's arguments at the suppression hearing and the district court's ruling that the officer's questions about methamphetamine was supported by reasonable suspicion.

"We conduct a de novo review of decisions regarding reasonable suspicion." *State v. Maez*, 2009-NMCA-108, ¶ 9, 147 N.M. 91, 217 P.3d 104, *cert. denied*, 2009-NMCERT-008, 147 N.M. 395, 223 P.3d 940. "An officer may expand the scope of an investigatory stop if the officer has reasonable suspicion that other criminal activity is taking or has taken place." *Martinez*, 2010-NMCA-051, ¶ 20; *see State v. Romero*, 2002-NMCA-064, ¶ 10, 132 N.M. 364, 48 P.3d 102 ("If evidence of another crime surfaces during a routine investigatory stop, the officer may proceed in a reasonable manner to investigate.").

Defendant argues that officers only articulated generalized statements about his personal hygiene and the condition of his car. We disagree. The officers initially observed Defendant cross a divided highway and make an illegal u-turn after seeing

9

a sign warning of a narcotics checkpoint ahead. In *State v. Anaya*, the Supreme Court held:

> If a driver is on notice that the checkpoint is ahead, then, where the driver turns away from the checkpoint and the circumstances lead the officer reasonably to believe that the driver is attempting to evade the checkpoint, the officer may form a reasonable suspicion that the driver is driving while intoxicated.

2009-NMSC-043, ¶ 16, 147 N.M. 100, 217 P.3d 586. We think it follows from *Anaya* that where a driver engages in conduct that indicates he is attempting to evade a narcotics checkpoint, an officer may form a reasonable suspicion that the driver is in possession of narcotics. In this case, Deputy Gimler testified that he asked about narcotics based on Defendant's act of crossing the median of Interstate 25 and making an illegal u-turn at the point of the checkpoint sign. We believe that this could lead an officer to reasonably believe that Defendant was trying to avoid the checkpoint. *See id.* ¶ 18 (stating that the officers could reasonably believe that a driver was trying to evade a DWI checkpoint where she made a u-turn at an intersection in front of a visible sign announcing the checkpoint and then proceeded in the opposite direction of travel).

Accordingly, we hold that the officers had reasonable suspicion that Defendant was in possession of narcotics, and the officers did not exceed the scope of the stop by inquiring about drugs and methamphetamine. *See State v. Williamson*,

10

2000-NMCA-068, ¶ 10, 129 N.M. 387, 9 P.3d 70 (holding that the officer did not exceed the scope of investigation by inquiring about drugs when the circumstances justified a reasonable suspicion).

**CONCLUSION**

For these reasons, we affirm the district court's denial of Defendant's motion to suppress.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**