This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37187**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**LORENZO LUCERO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Donna J. Mowrer, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**VARGAS, Judge.**

**{1}**     Pursuant to a conditional plea agreement, Defendant Lorenzo Lucero appeals the district court's denial of his motion to suppress certain evidence discovered after he was stopped for an investigation of a domestic dispute. On appeal, Defendant argues: (1) trial counsel provided Defendant with ineffective assistance of counsel; and (2) the district court erred in concluding the officer's search of Defendant's sock was reasonable. We affirm.

**BACKGROUND**

**{2}** The following factual background is based on testimony from Officer Jonathan Brashear, the only witness to testify at the hearing on Defendant's motion to suppress. After responding to a call about a "possible domestic" that may include injuries and broken windows, Officer Brashear was informed that the reporting party identified Defendant—whom Officer Brashear knew from previous encounters—as the other individual involved in the incident. Upon learning that Defendant had left the scene of the incident and was traveling northbound, Officer Brashear went looking for him. After fifteen to twenty minutes, he spotted Defendant walking on the road several blocks away from the scene of the incident. Officer Brashear asked Defendant to step off the road, advised him of his *Miranda* rights, and informed Defendant that he was investigating a domestic incident.

**{3}** While speaking with Defendant, Officer Brashear noticed that Defendant was wearing shorts, tennis shoes, and tall white tube socks, with bulges in each sock. Defendant's shoelaces were wrapped around his right leg on the outside of his sock and were "tied up around the [right sock]," as if holding in place a "small bulge." Although the sock on Defendant's left leg appeared to have a bulge as well, it was not wrapped with any shoelaces. Upon observing these bulges in Defendant's socks, Officer Brashear suspected he was concealing contraband or "something that could be easily destroyed," and asked Defendant about the bulges. Defendant reached inside his left sock and removed folded-up money. Explaining that "people have been known to conceal narcotics in their socks," Officer Brashear testified that he then asked Defendant if he could search and remove the contents of the bulge in Defendant's right sock. Defendant agreed, and Officer Brashear removed a folded piece of paper containing a "crystalline substance," which tested positive for methamphetamine.

**{4}** During the suppression hearing, the State argued Officer Brashear had reasonable suspicion that Defendant was in possession of an "illegal substance" and based on that reasonable suspicion, asked for Defendant's consent to search his right sock. Defense counsel conceded that Officer Brashear had reasonable suspicion to conduct the investigatory stop concerning the domestic dispute and that the officer later developed reasonable suspicion of further criminal activity based on the bulges in Defendant's socks. Notwithstanding these concessions, defense counsel framed Officer Brashear's search of Defendant's sock as a search incident to arrest for which probable cause was lacking. In response, the State noted that "if there had been an arrest made and there were a search incident to arrest, then [the State] would agree that probable cause would be the burden or the threshold the State would have to meet because . . . an arrest requires probable cause before a search." Nevertheless, the State argued, the proper standard to apply to this search was reasonable suspicion. The district court agreed with the State and denied Defendant's motion.

**DISCUSSION**

**{5}** Defendant's appeal is limited to two arguments. First, Defendant contends that trial counsel was ineffective by conceding the existence of reasonable suspicion during the suppression hearing. Second, Defendant claims that the district court erred in denying his motion to suppress because the officer's reasonable suspicion dissipated after the search of Defendant's left sock revealed no criminal activity.

## I.     The Record Is Insufficient to Review Defendant's Ineffective Assistance of Counsel Claim

**{6}** The Sixth and Fourteenth Amendments of the United States Constitution guarantee criminal defendants the right to effective assistance of counsel. *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032. To establish ineffective assistance of counsel, a defendant must show that: "(1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *State v. Bahney*, 2012-NMCA-039, ¶ 48, 274 P.3d 134. "We review claims of ineffective assistance of counsel de novo." *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44. Whether we address a claim of ineffective assistance on direct appeal, however, depends on the completeness of the record. *See State v. Trujillo*, 2012-NMCA-112, ¶ 48, 289 P.3d 238. Because the district court's record "may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness[,]" ineffective assistance of counsel claims are often better adjudicated through habeas corpus proceedings. *State v. Grogan*, 2007-NMSC-039, ¶ 9, 142 N.M. 107, 163 P.3d 494 (internal quotation marks and citation omitted); *Duncan v. Kerby*, 1993-NMSC-011, ¶ 4, 115 N.M. 344, 851 P.2d 466 (acknowledging that habeas corpus proceedings are the "preferred avenue for adjudicating ineffective assistance of counsel claims"). Here, Defendant claims counsel was ineffective when he conceded that Officer Brashear had reasonable suspicion to search his right sock after a search of his left sock revealed no contraband. However, we have no record related to trial counsel's strategy and tactics. *Cf. State v. Martinez*, 1996-NMCA-109, ¶ 36, 122 N.M. 476, 927 P.2d 31 ("Trial counsel chose not to move to suppress the evidence for reasons that are not part of the record, and we will not second guess [his or] her decision."). Furthermore, as discussed below, Defendant has failed to show on the record before us that his dissipation of reasonable suspicion theory he now advances on appeal, and which he contends trial counsel was ineffective for failing to assert below, would prove meritorious. *Cf. State v. Stenz*, 1990-NMCA-005, ¶ 7, 109 N.M. 536, 787 P.2d 455 ("Trial counsel is not incompetent for failing to make a motion when the record does not support the motion."). In light of the record on appeal, we cannot conclude that trial counsel provided ineffective assistance of counsel. Defendant's ineffective assistance of counsel claim is better suited for a habeas corpus proceeding.

## II.     The District Court Did Not Err in Denying Defendant's Suppression Motion

**{7}** Defendant also contends that Officer Brashear lacked reasonable suspicion to request consent to search Defendant's right sock. Our review of a district court's order on a motion to suppress presents "a mixed question of fact and law." *State v. Leyva*,

2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. "In reviewing a district court's ruling denying a motion to suppress, the appellate courts draw all reasonable inferences in favor of the ruling and defer to the district court's findings of fact as long as they are supported by substantial evidence." *State v. Murry*, 2014-NMCA-021, ¶ 10, 318 P.3d 180. "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *State v. Yazzie*, 2019-NMSC-008, ¶ 13, 437 P.3d 182 (internal quotation marks and citation omitted). "[W]e then review de novo the [district] court's application of law to the facts to determine whether the search or seizure were reasonable." *Leyva*, 2011-NMSC-009, ¶ 30.

{8}     Initially, we note that "[w]arrantless searches are presumed to be unreasonable." *State v. Bond*, 2011-NMCA-036, ¶ 11, 150 N.M. 451, 261 P.3d 599. "The State bears the burden of proving that a warrantless search or seizure is reasonable . . . [by] prov[ing] that it fits into an exception to the warrant requirement." *Id.* (internal quotation marks and citation omitted). "Recognized exceptions to the warrant requirement include exigent circumstances, searches incident to arrest, inventory searches, consent, hot pursuit, open field, and plain view." *State v. Weidner*, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025. An officer may also conduct "a limited search for weapons upon a reasonable suspicion that the suspect might be armed and presently dangerous" without first obtaining a warrant. *State v. Ketelson*, 2011-NMSC-023, ¶ 15, 150 N.M. 137, 257 P.3d 957 (internal quotation marks and citation omitted) (relying on *Terry v. Ohio*, 392 U.S. 1 (1968)).

{9}     In this instance, the State contends that the bulges in Defendant's socks gave Officer Brashear reasonable suspicion to investigate further and Defendant's consent to the search of his right sock excepted the search from the warrant requirement. After considering the totality of the circumstances, as explained in the testimony of Officer Brashear, the district court concluded:

> Alright I'm considering all of the facts, and based upon the facts, the court finds specifically and the parties appear . . . to concede . . . that there was initially reasonable suspicion for the officer to stop [Defendant] because of the allegations of the domestic violence incident. And then the defense even concedes that after that point in time, after that had been handled, there developed reasonable suspicion because of the bulge in the socks. And reasonable suspicion is the burden at this point in time. It's not probable cause. The court finds that there was reasonable suspicion to inquire further regarding the bulge. And I'm going to deny the motion to suppress at this point in time.

The district court later entered a written order in which it found Officer Brashear had reasonable suspicion to stop Defendant, but did not include additional findings or conclusions. *See State v. Seigling*, 2017-NMCA-035, ¶ 7 n.3, 392 P.3d 226 ("Generally, we consider oral rulings only to the extent they do not conflict with written rulings of the district court.").

**{10}** Turning to the question of whether the district court properly concluded that Officer Brashear had reasonable suspicion to inquire about the bulges in Defendant's socks, we note that "[a] reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856; *see also State v. Olsen*, 2012-NMSC-035, ¶ 13, 285 P.3d 1066 (explaining that reasonable suspicion is "a commonsense, nontechnical conception, which requires that officers articulate a reason, beyond a mere hunch, for their belief that an individual has committed a criminal act" (alteration, internal quotation marks, and citation omitted)). "Reasonable suspicion is measured by an objective standard." *State v. Cobbs*, 1985-NMCA-105, ¶ 13, 103 N.M. 623, 711 P.2d 900. "In analyzing whether an officer has reasonable suspicion, the [district] court must look at the totality of the circumstances, and in doing so it may consider the officer's experience and specialized training to make inferences and deductions from the cumulative information available to the officer." *State v. Gonzales*, 2011-NMSC-012, ¶ 15, 150 N.M. 74, 257 P.3d 894.

**{11}** Initially, we recognize that Defendant's trial counsel conceded Officer Brashear, after completing his investigation of the domestic violence allegations, "gained reasonable suspicion as to further criminal activity." Independent of this concession, however, we conclude that the specific circumstances articulated by Officer Brashear, taken together, gave him reasonable suspicion that Defendant was engaged in other criminal activity. *See Jason L.*, 2000-NMSC-018, ¶ 20. Officer Brashear testified that he noticed bulges in both of Defendant's socks, with the bulge in the right sock being held in place with a shoelace wrapped around Defendant's leg. Relying on his experience, Officer Brashear explained that the bulges caused him to suspect Defendant was concealing contraband because in prior cases, "people have been known to conceal narcotics in their socks." These facts, taken together, were sufficient to support reasonable suspicion that Defendant was engaged in other criminal activity, permitting Officer Brashear to expand the scope of the investigation, inquire about the bulges in Defendant's socks, and request Defendant's consent to search his right sock. *See State v. Martinez*, 2010-NMCA-051, ¶ 20, 148 N.M. 262, 233 P.3d 791 (concluding that "[a]n officer may expand the scope of an investigatory stop if the officer has reasonable suspicion that other criminal activity is taking or has taken place"); *State v. Portillo*, 2011-NMCA-079, ¶ 23, 150 N.M. 187, 258 P.3d 466 (concluding that under the New Mexico Constitution, an officer was permitted to "ask questions about narcotics and weapons only if he had developed independent, reasonable suspicion giving rise to such questions"); *see also State v. Funderburg*, 2008-NMSC-026, ¶ 33, 144 N.M. 37, 183 P.3d 922, 931 ("Because the detention was reasonable, [the officer's] request for consent was lawful.").

**{12}** On appeal, Defendant abandons his argument made before the district court that probable cause was necessary to search Defendant's socks and instead argues that the suspicion raised by the bulges in Defendant's socks was dispelled "after [Officer] Brashear determined that the bulge in the first sock was not contraband, but money[.]" Defendant contends on appeal that "[Officer] Brashear lacked reasonable suspicion to detain [Defendant] when [Defendant] consented to the search of the second sock" and

"the continued detention and search of [Defendant's] second sock was unreasonable." Defendant, however, failed to raise this argument before the district court and "[w]e generally do not consider issues on appeal that are not preserved below." *State v. Leon*, 2013-NMCA-011, ¶ 33, 292 P.3d 493 (internal quotation marks and citation omitted); *see* Rule 12-321(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked."). The purpose behind the preservation rule is three-fold:

> (1) to specifically alert the trial court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the trial court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue.

*State v. Bell*, 2015-NMCA-028, ¶ 2, 345 P.3d 342 (alterations omitted). In this instance, none of these purposes were satisfied and Defendant has failed to explain why we should consider his argument in the absence of preservation. But even if we were to consider this unpreserved argument, Defendant has failed to explain, in light of the particular circumstances in this case, why the absence of contraband in Defendant's left sock served to dissipate Officer Brashear's reasonable suspicion that Defendant's right sock contained contraband. In particular, when Officer Brashear inquired about the contents of Defendant's socks, Defendant only removed the contents of his left sock and the bulge in his right sock, which was fastened more securely than the one in his left sock, remained concealed.

**{13}**   Finally, we consider the State's contention that Defendant's consent excepted the search of his sock from the warrant requirement. "The [s]tate has the burden of proving that, under the totality of the circumstances, consent to search was given freely and voluntarily." *State v. Davis*, 2013-NMSC-028, ¶¶ 13-14, 304 P.3d 10. At the suppression hearing, Officer Brashear testified that after asking Defendant about the bulges in his socks, Defendant reached down, turned out his left sock, and showed him that there was money inside. The officer then asked to personally inspect Defendant's right sock with the shoelace tied around it, rather than have Defendant turn it out himself. Defendant consented and Officer Brashear removed the item where he found a folded up piece of paper with a crystalline substance. The State points out that "there is nothing in the record to suggest that Defendant's consent was the result of intimidation." And, while Defendant's counsel referred to Officer Brashear's actions as a "command or request to empty his socks," during argument at the suppression hearing, he did not raise the voluntariness of Defendant's consent, nor does he make any such argument on appeal. While the district court did not make specific findings related to Defendant's consent, the uncontradicted testimony of Officer Brashear constitutes sufficient relevant evidence that a reasonable mind would accept as adequate to support the conclusion that Defendant consented to the search of his right sock, excepting the search from the warrant requirement. *See Yazzie*, 2019-NMSC-008, ¶ 13; *Weidner*, 2007-NMCA-063, ¶ 6.

**CONCLUSION**

**{14}** We affirm the decision of the district court.

**{15} IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**KRISTINA BOGARDUS, Judge**